## GENERAL MILLS, Inc., v. WILLIAMS et al.

### No. 9174.

Circuit Court of Appeals, Sixth Circuit.

Dec. 16, 1942.

---

W. A. Belt,. of Toledo, Ohio (Kingman, Cross, Morley, Cant & Taylor, of Minneapolis, Minn., and Marshall, Melhorn, Davies, Wall & Bloch and Leland L. Lord, all of Toledo, Ohio, on the brief), for appellant.

Lowell Goerlich, of Toledo, Ohio (Edward Lamb and Lowell Goerlich, both of Toledo, Ohio, on the brief), for appellees.

Before HICKS, ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

In this case the District Court allowed recovery of certain sums found to be due the appellees, employees of appellant, under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., 29 U.S.C.A. § 201 et seq., as unpaid overtime compensation, liquidated damages, and attorneys' fees. The pertinent portions of the statute are printed in the margin.[1]

The facts are mainly not in controversy. The record reveals that on or about October 22, 1938, appellant's plant manager met with the four appellees who are employed as night watchmen at appellant's plant at Rossford, Ohio, and informed them that there would have to be an adjustment of wages and hours because of the enactment of the Fair Labor Standards Act, and that the appellant would either reduce the hours from 54 to 40 hours per week, or reduce the rate of pay from 60 to 52½ cents per hour for the first 40 hours and pay time and one-half thereafter. He explained that under the statute the company could put on other men to do the work as watchmen for 60 cents an hour instead of paying overtime of 90 cents to the present employees for a large part of the work and proposed that they work longer hours at a reduced rate of

[1] "Sec. 7. (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times 'the regular rate at which he is employed. * * *" 29 U.S.C. § 207, 29 U.S.C.A. § 207.

"Sec. 16. * * * (b) Any employer who violates the provisions of section 6 or section 7 of this Act [section 206 or section 207 of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. * * * The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216, 29 U.S.C.A. § 216.

52½ cents per hour, which with time and one-half for overtime would give them approximately the same total earnings as they had been receiving. The men were assured that if they agreed to the lower hourly rate their hours would not be reduced. They wished to continue to receive the amount of their then weekly earnings and agreed to the proposal with the qualification that they were to find out more about the law; but nothing further was said or done with reference to that point. The change was not discussed with appellee Moreo, another watchman having somewhat different duties, but he was informed about the same time that a similar arrangement as to his hourly rate was being adopted. The agreement of October 22d related back to the beginning of that week. Payments were made from October 16, 1938, onward according to the new rate, and appellees worked under this schedule without objection for over two years, when this suit was instituted. As a result of the new arrangement the four watchmen received the same aggregate pay as before and Moreo received a trifle more. The arrangement was reported to the local union, which made no protest. No union action was taken concerning it other than to incorporate the new schedule of rates in various collective bargaining agreements.

The District Court found that at the effective date of maximum hours provision of the Act, October 24, 1938, and thereafter, the regular rate at which appellees Williams, Griffin, Kleyjewski and Heckart were employed was 60 cents per hour and that of appellee Moreo was 65 cents per hour; that the appellant effected an arrangement whereby appellees received the same amount per week for a 56-hour week that they had received immediately prior to the effective date of the Fair Labor Standards Act, and that the hourly rates were manipulated so that the same result would be achieved when time and one-half the hourly rate was paid for over 40 hours. The court also found that the arrangement "was an attempt, by contract, to circumvent the purpose of the Fair Labor Standards Act by reducing wages, maintaining the same number of hours and giving the workman the same pay that he was receiving before the act went into effect," and "was a paper arrangement which was used to conceal the actual hour rate * * * for the purpose of evading and circumventing the provisions of the Fair Labor Standards

Act of 1938." It concluded that appellant did not pay appellees overtime compensation at one and one-half times the regular rate at which they were employed, as required by § 7 of the statute, and allowed recovery of unpaid overtime compensation based upon a regular rate of 60 cents per hour for the four watchmen and 65 cents an hour for Moreo.

Appellant contends that the agreement for a reduced basic hourly rate is valid and enforceable under the statute and within the decision of the Supreme Court in Walling, Adm'r, v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. That case had not reached the Supreme Court at the time the District Court announced its decision in the instant case. In its opinion the court recognized that the decision of the District Court in the Belo case, A. H. Belo Corp. v. Street, 36 F.Supp. 907, which was later affirmed both by the Circuit Court of Appeals and the Supreme Court, supported the theory of the appellant herein. The court stated that the Belo case unequivocally accepts "the employee's right to contract with employer as long as the minimum pay provisions of the Act are not infringed upon," [39 F.Supp. 849, 851], and said that "there is no doubt" that this case is opposed to the decision in the instant case.

The Supreme Court has now announced its decision affirming the holding in the Belo case, and this affirmance requires reversal of the judgment. It is true that the Supreme Court commented upon the fact that the Circuit Court of Appeals found that the contracts there construed were actually "bona fide contracts of employment" and were "intended to, and did, really fix the regular rates at which each employee was employed." [316 U.S. 624, 62 S.Ct. 1226, 86 L.Ed. 1716.] Here, on the contrary, the District Court found not only that the purpose of the contract of October 22d was to circumvent the Act, but that the arrangement was a "paper arrangement," used to conceal the real rate of pay used and the rate was not that agreed upon, but the previous rate. This record, however, presents no substantial evidence in support of the latter finding. Appellant's payroll records show that the appellees were paid at the new rates, minor discrepancies being fully explained. Several of the appellees testified that the rates had been reduced, and no testimony was given to the contrary. The single question presented,

therefore, is that of the validity of the contract, unaffected by any feature of concealment or subterfuge. In this connection the following language of the Supreme Court is pertinent: "It is no doubt true, as petitioner contends, that the purpose of respondent's arrangement with its employees was to permit as far as possible the payment of the same total weekly wage after the Act as before. But nothing in the Act bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum required by the Act." (316 U.S. 624, 630, 62 S.Ct. 1223, 1226, 86 L.Ed. 1716.)

■■ Since, then, it is established as a matter of law that such a contract is valid, we can conceive of no theory under which a contract substantially identical can be found as a matter of fact to circumvent the statute in absence of coercion or fraud. For the same reason appellant's advice to the appellees that the proposed change was lawful cannot be considered as a basis for holding the contract void.

The propriety of this conclusion is borne out by a comparison of the operative facts in the Belo case with those presented here. In each case the employer, after the statute was passed and before the effective date of § 7 thereof, approached its employees with a proposition to make a new contract covering the regular rate of wages and hours of work. In each case the employer stated that under the statute the amount of money to be received by the employees each week would be lower unless a new contract or arrangement was made. In the Belo case the statement was formal and couched in a letter sent to numerous employees which constituted an offer of a new and lower basic rate of pay "in order to conform" the employment arrangement to the scheme of the Act "without reducing the amount of money" received each week by each individual employee. But the purpose was identical with that of the informal proposal in the instant case.

As pointed out by the Supreme Court in the Belo case, a controversy where definite hourly wages are agreed upon, as they were in the instant case, differs essentially from the situation presented in Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, where the employment contract is for a fixed weekly wage and variable or fluctuating hours of work without an agreement for an hourly rate of pay. Cf. Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. ——, 63 S.Ct. 125, 87 L.Ed. ——, decided November 9, 1942, and Bumpus v. Continental Baking Co., 6 Cir., 124 F.2d 549, 552.

■ The District Court in its opinion relied upon § 18 of the Act (Title 29 U.S.C. § 218, 29 U.S.C.A. § 218), which declares that "No provision of this Act [sections 201–219 of this title] shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this Act [sections 201–219 of this title]. * * *" The Supreme Court did not, in the Belo case, supra, discuss the effect of this provision except to state in a footnote that it is "certainly not a prohibition." It may well have been inserted in the statute to prevent any employer in controversies arising under the National Labor Relations Act from excusing the reduction of a wage to the minimum established by the Fair Labor Standards Act, upon the ground that the statute contemplated such a reduction. In view of the express holding of the Supreme Court that a contract to pay the weekly wages received previous to the enactment of the statute, even though the arrangement is achieved by lowering the basic hourly compensation, is not barred by the Act, it is evident that § 18 does not invalidate the contract in the instant case.

Since the purpose of making the arrangement of October 22, 1938, and the arrangement itself are valid, and the rate established thereunder constituted the regular rate of pay under the statute, there was no basis for recovery of unpaid overtime compensation.

The judgment is reversed and the case remanded for further proceedings in accordance with this opinion.