## VOGELPOHL et al. v. LANE DRUG CO.
### No. 4815.

District Court, N. D. Ohio, W. D.
June 12, 1944.

Edward O. Lamb, of Toledo, Ohio, for plaintiff.

I. R. Morris and Benesch, Marsteller, Friedlander & Morris, all of Cleveland, Ohio, and Arnold F. Bunge, of Toledo, Ohio, for defendant.

KLOEB, District Judge.

This action was brought by the plaintiff and intervening plaintiffs against the defendant for overtime compensation under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The plaintiff and each of the intervening plaintiffs were employees at the defendant's central warehouse in Toledo, Ohio.

The defendant is an Ohio corporation, with its principal office at Cleveland, Ohio. It maintains a central warehouse and six retail stores in Toledo, Ohio. All of the merchandise purchased by the defendant is shipped to its warehouse in trucks and railroad cars, and substantially all of this merchandise is purchased outside the State of Ohio. The warehouse houses the administration offices of the company, but there is no retail store in or at the warehouse building. During the period covered by the complaint and intervening complaints there was sold through defendant's retail stores goods amounting to $7,062,620.08 at retail prices, while there was sold to out of state drug stores goods amounting to $110,334.55 at cost prices. These latter sales were made to firms friendly to the defendant, and were made as an accommodation with no motive of profit. The goods sold through the retail stores were distributed from the defendant's central warehouse. Expressed in percentages, based on these money sales, approximately 98.44% of the defendant's business was sales at retail, while approximately 1.56% was sales to out of state firms at cost prices.

The plaintiff and intervening plaintiffs devoted approximately 5% of their time to unloading from trucks and railroad cars merchandise received from outside the State of Ohio, and in wrapping and labeling packages of merchandise to be shipped outside the State of Ohio.

The remaining 95% of their time was devoted to checking the merchandise received, unwrapping, labeling and placing it on shelves, storing, checking, sorting, wrapping and loading the same, and filling orders for distribution to the defendant's various retail stores. From December 18, 1938, to June 30, 1938, the workweek was 61 hours, and thereafter was 60 hours.

Up until and including October 19, 1940, each of the claimants was paid on weekly salary basis without regard to the number of hours worked. Beginning October 20, 1940, the claimants were each paid on an hourly basis, with time and one-half for all hours over forty. The rate was so adjusted that the weekly salary of the employees remained the same except that, in

a few cases, the employees received a few cents more each week. After listening to the evidence of both sides in explanation of the change, I am convinced that the arrangement was arrived at through agreement with the employees, and that its purpose was to permit the payment of at least the same total weekly wage and at the same time to comply with the Act. I am convinced that there was no agreement that the employees' "hourly rate would not be reduced", since they had not been on an hourly rate. There is nothing in the Act which prohibits such an arrangement. Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716; General Mills v. Williams, 6 Cir., 132 F.2d 367, 144 A.L. R. 1371.

■ It is too well settled to need extended citation of authority that the applicability of the Fair Labor Standards Act depends upon the character of the employee's work and not on the business of his employer. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U.S. 125, 63 S. Ct. 494, 87 L.Ed. 656.

It is true, of course, as said by the Court in Fleming v. Jacksonville Paper Co., 5 Cir., 1942, 128 F.2d 395, 397, that "the two are closely related, because the employee's work cannot be in commerce unless the employer's business is to that extent in commerce."

■ What then must be the character of the employee's activity? It must be characterized by two elements, viz., first, he must be engaged in interstate commerce or in the production of goods for commerce, second, he must devote a substantial part of his time in interstate commerce or in the production of goods for commerce. A. B. Kirschbaum Co. v. Walling, op. cit.; Warren-Bradshaw Drilling Co. v. Hall, op. cit.; Walling v. Jacksonville Paper Co., op. cit.; Overstreet v. North Shore Corp., op. cit.

■ Applying these principles to the present case, I am of the opinion that the plaintiff and intervening plaintiffs have failed to show that the Act is applicable to them. I am satisfied that that portion of their work which consisted of unloading merchandise from cars or trucks and wrapping and labeling packages of merchandise to be shipped to points outside Ohio was work in interstate commerce. Baltimore & Ohio S. W. R. R. v. Burtch, 263 U.S. 540, 44 S.Ct. 165, 68 L.Ed. 433. As to their work in "checking the merchandise received, unwrapping, labeling and placing it on shelves, storing, checking, sorting, wrapping and loading the same, and filling orders for distribution to the defendant's various retail stores", I am of the opinion that such work is not in interstate commerce or in the production of goods for commerce.

It is on this latter point that some consideration must be given to the nature of the defendant's business. In Walling v. Jacksonville Paper Co., op. cit., the Supreme Court had occasion to consider the warehousing of goods purchased in interstate commerce by a wholesaler. The Court said [317 U.S. 564, 63 S.Ct. 335, 87 L.Ed. 460], "The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey." In that case the goods purchased fell into three categories— 1. Those purchased by the wholesaler on order of the customer, with the intention that they should be carried at once to the customer upon receipt; 2. Those obtained by the wholesaler from the manufacturer or supplier to meet the needs of specified customers pursuant to some understanding with the customer, though not for immediate delivery; 3. Those based on anticipation of the needs of specific customers, rather than on prior orders or contracts. Goods in the first two categories were held to remain in commerce, while goods in the third category were said to remain in commerce only when the evidence with particularity showed them to be different from goods acquired and held by a local merchant for local disposition.

■■ The Jacksonville case dealt with a wholesaler. The defendant in this case is a chain store activity. Under the decision in Allesandro v. C. F. Smith Co., 6 Cir., 1943, 136 F.2d 75, 77, 149 A.L.R. 382, and by the great weight of authority, a chain store activity such as in this case constitutes a single retail establishment. As such, practically all the merchandise purchased by the defendant was "goods acquired and held by a local merchant for local disposition." Allesandro v. C. F. Smith Co., op. cit. The average of 98.44% of goods shown by the stipulation to have been sold at retail in Ohio was not goods

in interstate commerce, and any work done on such goods at defendant's warehouse was not work in interstate commerce.

It was in work upon this 98.44% of goods that the plaintiff and intervening plaintiffs devoted 95% of their time. The remaining 5% of their time was devoted to work on the 1.56% of goods in interstate commerce. The Court is of the opinion that this work in interstate commerce did not constitute a substantial part of the employees' time. In determining what is a substantial portion of an employee's time, the Court is not without some guidance, even though there is not a great deal of authority. In various regulations of the Administrator, twenty to twenty-five percent appears to be the percentage determined upon as defining the word "substantial". In defining an employee engaged in a local retailing capacity, one of the elements of the Administrator's definition is that such employee's "hours of work of the same nature as that performed by non-exempt employees do not exceed 20 percent of the number of hours worked in the workweek by such non-exempt employees". The same element is a part of the definition of an executive or professional employee, and of an outside salesman. Again, Interpretative Bulletin No. 6, issued by the office of the Administrator, paragraph 18, in discussing the attributes of a retail establishment, states, "An establishment which makes some non-retail sales nevertheless would be considered a retail establishment if the gross receipts from non-retail sales are not substantial in relation to the total gross receipts of the establishment. * * * * The Administrator will ordinarily consider the non-retail selling of an establishment to be substantial if the gross receipts from such selling constitute more than one-quarter percent (25%) of the total gross receipts of the establishment". Again, in discussing the relative fields of jurisdiction of the Wages and Hours Division under the Act, and of the Interstate Commerce Commission under one of the exemptions in the Act, Interpretative Bulletin No. 9 of the United States Department of Labor, Wages and Hours Division, and the legal field letter from the office of the Solicitor of the Department of Labor, states that "any amount of work in excess of 20 percent of the total number of hours worked by the particular employee within a particular workweek" brought the employee out of the jurisdiction of the Interstate Commerce Commission.

In the case of Anuchick v. Transamerican Freight Lines, D.C., 46 F.Supp. 861, Judge Picard, while stating that he personally did not believe that twenty percent is a substantial part of one hundred percent, nevertheless gave effect to these interpretations of the meaning of "substantial". Without determining just what is a substantial portion of an employee's time, I am of the opinion that, in this case, five percent or approximately three hours per, week, devoted to work in interstate commerce does not constitute a substantial portion of the employee's time. See also Snyder v. John J. Casale, Inc., D.C., 49 F.Supp. 926, 928.

Since the plaintiff and intervening plaintiffs have failed to prove that a substantial portion of their time was devoted to work in interstate commerce, or in the production of goods for commerce, they have failed to make a case and the complaint and intervening complaints must be dismissed for this reason.

■ There is, also an additional factor which must be considered. The defendant contends strongly, in fact it is its principal defense, that it is exempt from the operation of the Fair Labor Standards Act by reason of Sec. 213(a) (2) of the Act 29 U.S. C.A. The pertinent provision is as follows:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * *."

The Court is inclined to agree with the defendant that, certainly under the facts here, the exemption is operative.

As said above, there can be no question under the ruling in Allesandro v. C. F. Smith Co., op. cit., and other authorities that the defendant operates a retail establishment. The fact that 1.56% of its sales were non-retail sales would not deprive it of its character as such. Interpretative Bulletin No. 6, paragraph 18, quoted above, exemplifies clearly the mind of the Administrator of the Act on that question, and this Court and many courts have held numerous times that such interpretations by the Administrator are entitled to great weight.

There can also be no question that the greater part of the defendant's selling is in intrastate commerce.

I am of the opinion that the plaintiff and intervening plaintiffs, devoting only a negligible portion of their time to work in interstate commerce, must be held to be exempt under Sec. 213(a) (2) the same as all the other employees of the defendant. Allesandro v. C. F. Smith Co., op. cit.

The defendant may have ten (10) days to prepare findings of fact and conclusions of law in accordance with this opinion, and the plaintiffs may have five (5) days thereafter to present their objections and suggested additions thereto.