**WALLING, Adm'r of Wage and Hour Div., U. S. Dept. of Labor, v. HARNISCH-FEGER CORPORATION.**

No. 8553.

Circuit Court of Appeals, Seventh Circuit.

Nov. 17, 1944.

590

Louis Quarles, Leo Mann, Maxwell H. Herriott, and Thomas W. Korb, all of Milwaukee, Wis., for appellant.

Douglas B. Maggs, Bessie Margolin, and David S. Polier, Department of Labor, all of Washington, D. C., Kenneth P. Montgomery, of Chicago, Ill., and Archibald Cox, Associate Sol., of Washington, D. C., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

This suit is one to enjoin defendant's alleged violation of the one and one-half overtime provision of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The violations were denied by defendant. The court found for plaintiff and permanently enjoined defendant "from violating the provisions of Sections 15(a) (1) and 15(a) (2) of the Fair Labor Standards Act of 1938" in the respects designated. Defendant appealed from this decree.

The facts are free from dispute. There is a mutual concession of good faith between opposing litigants and differences are concededly advanced, honestly. The employees, while not admitting the validity of defendant's contention, are not the complainants. They were represented by the Union, the United Steelworkers of America in all the negotiations. Defendant and its employees are, in other words, in seeming accord over their wage agreement, which they reached amicably and which is the result of their joint successive wage agreement efforts dating back to 1938. In other words, the parties, prior to the passage of the Act in question, began the present incentive wage practice in 1927 and provided for one and a half overtime compensation as far back as 1933.

Generally stated, the controversy is over the correct base upon which defendant must compute its time and a half pay for overtime work. There is no dispute as to the existence or terms of the wage contract which the employees and defendant negotiated. It is in writing and provided for compensations of the employees at a rate higher than the minimum provided for by the Act, and it fixed the hours of service and overtime payments where services exceed the eight hour day and the forty hour week.

Differences arise out of the time and a half payment to a group of employees numbering about 1250 (of the total of 4000) who are defined as "incentive workers." "Incentive workers" are described as piece workers who are employed under an agreement which fixes an hourly rate ranging from 58¢ to $1.08 per hour and also provided for additional pay in case the worker or workers were able to show results better than the time study schedules for the various products. Nearly all (98½%) of these incentive workers have in each pay roll period earned more than their basic or fixed wage because they did their work more speedily than the time study calculations set for the particular task. An interesting chart has been submitted, which shows the amount of incentive pay which the incentive wage earners have received because of their ability to turn out work faster than the estimated time fixed for the doing of the task. This chart shows the incentive pay varies from 2¢ to 29¢ an hour over the basic wage schedule. The amount of the incentive pay of an employee is dependent solely upon his skill and industry. The compensation of an incentive worker may be no more than base rate pay—and but for the contract, might be even less.

The legal controversy is over the application of time and a half pay to these incentive workers. Plaintiff contends that the overtime computations should be upon the

basis of the actual wage paid to the incentive worker including incentive pay. The defendant argues that the basic wage rates fixed in the wage agreement are the correct bases for computing the time and a half pay.

The controlling statute reads as follows:

Sec. 7(a)—"No employer shall * * * employ any of his employees * * * for a workweek longer than forty hours * * * unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the *regular rate* at which he is employed."

What was the "regular rate" at which defendant's incentive workers were employed? This is the question for decision.

The employment contract, here involved, provides:

Sec. 3(e)—"As agreed to between the Company and the Union in the last two annual collective bargaining sessions, the parties agree that, for all purposes, the *regular* rate of pay at which each employee who participates in an incentive plan is employed, is the base rate of each such employee. It is the intention of the Company and the Union that the base rates and piece work rates fixed by this agreement shall remain in effect, and that there shall be no general reductions therefrom during the life of this agreement. However, the Union and the Company recognize that, should adverse economic conditions arise, it may be desirable and necessary, in the interest of employees' security of employment and earnings and the Company's future welfare, to modify the rates hereby established before or at the expiration of this agreement, and it is, therefore, agreed that, should the Company in good faith request such a modification of rates during the life of this agreement, the Union will in good faith enter into collective bargaining negotiations on that request. In consideration thereof the Company agrees that it will not seek such a modification unless the total shop productive hours fall below One Hundred Thirty Thousand (130,000) per month for Three (3) successive months."

The decision in Walling v. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, controls the disposition of this appeal. The Belo case and Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, were decided the same day. Neither represents the unanimous opinion of the Court. We must assume the majority of the Court found the two opinions were entirely reconcilable.

We see no good reason for not accepting the pronouncement of principle appearing in the Belo opinion and applying it here, even though the facts in that case differ from the one before us. The heart of the decision in the Belo case [316 U.S. 624, 62 S.Ct. 1227, 86 L.Ed. 1716] is to be found in the statement, "It is agreed that as a matter of law employer and employee may establish the 'regular rate' by contract."

Nor can we ignore the philosophy back of the final conclusion, which is expressed, thus:

"The problem presented by this case is difficult—difficult because we are asked to provide a rigid definition of 'regular rate' when Congress has failed to provide one. Presumably Congress refrained from attempting such definition because the employment relationships to which the Act would apply were so various and unpredictable. And that which it was unwise for Congress to do, this Court should not do. When employer and employees have agreed upon an arrangement which has proven mutually satisfactory, we should not upset it and approve an inflexible and artificial interpretation of the Act which finds no support in its text and which as a practical matter eliminates the possibility of steady income to employees with irregular hours. Where the question is as close as this one, it is well to follow the Congressional lead and to afford the fullest possible scope to agreements among the individuals who are actually affected. This policy is based upon a common sense recognition of the special problems confronting employer and employee in businesses where the work hours fluctuate from week to week and from day to day. Many such employees value the security of a regular weekly income. They want to operate on a family budget, to make commitments for payments on homes and automobiles and insurance. Congress has said nothing to prevent this desirable objective. This Court should not."

Recently decided (November 6, 1944) by the Supreme Court, is the case of Walling, Administrator, v. Helmerich & Payne, Inc., 65 S.Ct. 11, 14, and the opinion there announced sheds further light on the proper application of the overtime wage rate provision of Section 7(a) of the Fair Labor Standards Act of 1938.

As in the Belo. case, the Court affirmatively stated what the Act contemplated. We quote from the opinion:

"The Act clearly contemplates the setting of the regular rate in a bona fide manner through wage negotiation between employer · and employee, provided that the statutory minimum is respected."

The opinion is largely devoted to showing that the rates fixed in that case were not reached in a bona fide manner. It held that the statute may not be avoided by an adoption of unrealistic and artificial methods of computing the regular rate. The Court says, "This freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes." Then, too, it points out that in the contract before the court the parties so expressed themselves that the employee was not paid, time and a half his regular hourly rate, when he worked in excess of forty hours a week. Only when he worked beyond eighty hours did he receive overtime payment.

The Court there concludes:

"Nothing in this Court's decision in Walling v. Belo Corp., supra, sanctions the use of the split-day plan. The controversy there centered about the question whether the regular rate 'should be computed from the guaranteed weekly wage or whether it should be identical with the hourly rate set forth in the employment contract. There was no question, as here, pertaining to the applicability of the regular rate to the first 40 hours actually and regularly worked, with the overtime rate applying to all hours worked in excess thereof."

Clearly, the Helmerich case is distinguishable from our case so far as the facts are concerned. The Court indirectly reaffirmed the quoted language in the Belo case.

 From our study of the two decisions we conclude:

(a) The employer and employee may (and it is contemplated they should) negotiate and agree by contract upon *"the regular rate"* of compensation. *Provided,* however, in so doing they act in good faith and respect the minimum of wages and the minimum hours of services fixed by the statute. (We have in the instant case an agreement between the parties where the regular rate of pay is settled and set forth in a written contract.) Also there was present the utmost good faith.

(b) The contract negotiated in our case respected the statutory minimum both as to the compensation and the hours of work. As to this requirement there is no controversy.

(c) The overtime payments in excess of the statutory minimum of hours is covered and the one and a half pay is based upon the *regular* wage.

If the wage agreement in this case did not settle the regular rate in a bona fide manner through negotiation and did not respect the statutory minimum provisions, we are at loss to know how the parties may cover the subject by agreement.

Also present is the query,—if the parties by inserting a definition of a "regular rate" in their wage agreement did not intend to fix said "regular rate" as a basis for the time and a half computation, what was their purpose in inserting it at all?

There would seem to be good reason for providing as the parties agreed, that the regular rate should be the hourly rate (ranging from 58¢ to $1.08 an hour) rather than said hourly rate *plus* an *unknown* and *undeterminable* addition as incentive compensation. The incentive compensation varied. It was not known. It varied not only in different months but was different with different employees and different products. The addition due to incentive pay was as low as 2¢ and as high as 29¢ per hour. The employer and employee evidently wished to provide that overtime payments be paid promptly and at the same time as the payment of the regular wages. They therefore defined regular wage and excluded therefrom the incentive wage, the determination of which was unknown and unfixed sometimes for weeks and even months.

There is only one question before us: What was the regular rate of pay? The employer and employees have, as they had a right to do, answered that question for us. They have incorporated their agreement in writing. They acted in good faith. They agreed upon the regular rate of pay, and their regular rate respected the minimum rquirement provisions fixed in the statute. We must therefore accept their agreement.

The decree is reversed with directions to dismiss the complaint.

MINTON, Circuit Judge (dissenting).

I am unable to agree with the majority's opinion. I cannot agree that the Belo case is authority for the bold proposition that, where the "regular rate" of pay is defined by contract, that definition is controlling, if the contract is made in good faith and the rate specified is above the minimum of the Wages and Hours Act. True, the Belo case, 316 U.S. 624, 630, 62 S.Ct. 1223, 1226, 86 L.Ed. 1716, said:

"* * * But nothing in the Act bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum required by the Act."

This language has been quoted with approval in Bergschneider v. Peabody Coal Co., 7 Cir., 142 F.2d 784, 786; Murray v. Noblesville Milling Co., 7 Cir., 131 F.2d 470, 474; General Mills, Inc. v. Williams, 6 Cir., 132 F.2d 367, 370, 144 A.L.R. 1371; and White v. Witwer Grocery Co., 8 Cir., 132 F.2d 108, 111. Similarly, see Shepler v. Crucible Fuel Co., 3 Cir., 140 F.2d 371. In these cases, the contract set forth a mathematical formula to be applied to the contract "regular rate" to give a round figure, which was the approximate amount actually paid the employee. The computation was done solely for the purpose of enabling the employer to pay the same wages per pay period which he had been paying before the Act went into effect.

In the case at bar, the "regular rate" is likewise defined in the contract, but in practice it is not the rate at which 98½% of the incentive workers are paid. There is no relationship between the "regular rate" and the amounts actually paid per hour. The only purpose of this contract is to enable the company to continue its piecework pay schedule without interference by the Wages and Hours law. In this respect again, the situation differs from the Belo case. In that case, the contract called for a minimum guarantee to each employee of $40 per week. As its opinion shows, the Supreme Court considered that provision very beneficial to the employees in view of the irregular hours worked and the employees' desire for security. In our case, we have only a minimum hourly guarantee but no weekly guarantee, and since there is no requirement that any minimum number of hours per week be worked, this persuasive aspect of the Belo case is absent. Walling v. Livernois, D.C., 50 F. Supp. 978.

The contract may define a certain "regular rate," but if the men actually work under, and are paid at, a different rate, it seems to me the latter is the "regular rate." It is the realities of the situation that control and not the unapplied terms of a contract. The Supreme Court has said as much in the recent case of Walling v. Helmerich & Payne, Inc., 65 S.Ct. 11, 14. In that case the court said:

"It is no answer that the artificial regular rate was a product of contract or that it was in excess of the statutory minimum. The Act clearly contemplates the setting of the regular rate in a bona fide manner through wage negotiations between employer and employee, provided that the statutory minimum is respected. But this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes. Even when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40. Any other conclusion in this case would exalt ingenuity over reality and would open the door to insidious disregard of the rights protected by the Act."

Because I believe that the "regular rate" fixed by the contract is not the one actually used, and that the "regular rate" is to be determined by what the parties do and not by what they contract to do, I would affirm the judgment of the District Court.