W. Willard **WIRTZ**, Secretary of Labor,
United States Department of Labor,

v.

Glenn O. **DUNMIRE**, Jr., dba Lynn's
Dairy Products Company.

Civ. A. No. 9724.

United States District Court
W. D. Louisiana,
Shreveport Division.

March 23, 1965.

quirements of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. He also seeks to compel defendant to pay amounts due for past violations of the wage and hour provisions. Violations are alleged to have occurred during the period from September 11, 1961, to the present.[1]

Defendant owns and operates Lynn's Dairy Products Company, which is engaged in processing raw milk into whole milk and other milk products and in the manufacture of ice cream. In addition to regular commercial sales of milk and ice cream and sales of these products to various schools in the area, defendant sells milk to Barksdale Air Force Base pursuant to a contract with that installation. From April 25, 1962, through March 24, 1964, defendant delivered approximately 5,000 one-half pints of milk per month to Barksdale. Deliveries were made daily, with the exception of holidays and certain occasions when no milk was needed.

Barksdale Air Force Base is a Strategic Air Command base from which aircraft regularly depart to destinations outside Louisiana. Some of these aircraft take off and return to Barksdale, but during the course of their flight they proceed over other states. The milk delivered to Barksdale by defendant is used in preparing flight lunches to be placed aboard aircraft and consumed by members of the crew during the flight.

Plaintiff contends that defendant's employees are "engaged in commerce or in the production of goods for commerce" so as to bring them under the coverage of 29 U.S.C.A. §§ 206 and 207.

Throughout the period in question defendant regularly received in intrastate and in interstate commerce goods used in connection with his dairy business. James Chelette was designated by defendant as the person to receive and sign for these shipments. If Chelette was not present, the goods were received by either defendant or George Pitner, and one of

Charles Donahue, Sol., U. S. Dept. of Labor, Washington, D. C., Beverly R. Worrell, Regional Atty., and Norman H. Winston, Associate Regional Atty., U. S. Dept. of Labor, Birmingham, Ala., for plaintiff.

Henry A. Politz, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

By this action the Secretary of Labor seeks to enjoin defendant from violating the record keeping provisions and the minimum wage and maximum hour re-

---

1. It is not disputed seriously that defendant has been keeping accurate records through the use of a time clock since ten days after the filing of this suit, or since September 19, 1963.

the other employees occasionally would assist Chelette in unloading goods. In addition to these duties, Chelette also loaded milk trucks each day, and he also operated the popsicle machine.

Chelette devoted an average of four hours per week to the task of unloading and receiving shipments of goods in interstate and intrastate commerce, but he was unable to say what portion of that time was devoted exclusively to receiving shipments from outside Louisiana. He worked approximately 60 hours per week and was paid $59.50 per week. Plaintiff claims that Chelette was "engaged in commerce" and that both the maximum hour and minimum wage requirements were violated as to him.

■ For an employee to be covered under the Act, it is not necessary that all of his employer's business be shown to have an interstate character. It is enough if a *substantial part* of the employee's activities relate to the movement of goods in interstate commerce. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943); Tilbury v. Rogers, 123 F.Supp. 109 (W. D.La.1954), aff'd per curiam Tilbury v. Mitchell, 5 Cir., 220 F.2d 757, cert. denied 350 U.S. 839, 76 S.Ct. 77, 100 L. Ed. 748.

Defendant contends that Chelette did not spend a substantial part of his time handling goods in interstate commerce. He also contends that plaintiff has the burden of showing what part of the 4 hours per week Chelette spent receiving goods from outside Louisiana and that plaintiff has not met that burden.

In addition to Chelette's testimony, plaintiff introduced 297 invoices representing shipments of goods received by defendant from outside Louisiana during a 22 month period, an average of slightly over 3 per week. Chelette testified that he spent from 30 minutes to an hour

and a half unloading each shipment, depending on what was in the shipment. Taking an average of these figures, he spent approximately 3 hours per week unloading interstate shipments, or about 5% of his work-week.

■ In determining coverage under the Act the courts are to give the Act a liberal construction. Mitchell v. Empire Gas Engineering Co., 256 F.2d 781 (5 Cir. 1958). See Walling v. Jacksonville Paper Co., supra. What constitutes a "substantial" part of an employee's time is incapable of exact determination for all cases. However, in Southern California Freight Lines v. McKeown, 148 F.2d 890, 892 (9 Cir. 1945) "substantial" was held to include an employee who spent 7% of his working time in interstate commerce. In McComb v. W. E. Wright Co., 168 F.2d 40 (6 Cir. 1948), employees who spent 3.57% of their time unloading and storing goods in interstate commerce were held to be covered by the Act. In light of these cases and the admonition that the Act be liberally construed, we think James Chelette devoted a substantial part of his time to receiving goods in interstate commerce, and he is a covered employee under the Act.[2] As to Chelette, defendant violated both the minimum wage and overtime provisions of the Act throughout the period claimed.

■ Plaintiff contends that ten other of defendant's employees are covered by the Act because they are engaged in production of goods in interstate commerce. This contention is based upon their alleged participation in production of the milk delivered to Barksdale in one-half pint cartons. Defendant points out that the sale of half pints to Barksdale constitutes only one-half of one percent of defendant's total volume of sales. He receives approximately $250 per month for these sales and realizes a profit of ten to fifteen dollars per month. Defend-

2. Cf. Vogelpohl v. Lane Drug Co., 55 F. Supp. 564 (N.D.Ohio 1944) in which the court held that three hours per week devoted to work in interstate commerce, or 5% of the employee's time, did not constitute a substantial part of his time. However, we feel that the McComb case cited above, a more recent decision by the Sixth Circuit, of which Ohio is a part, is better authority. McComb makes the Vogelpohl case have doubtful validity.

ant called for application of the doctrine of *"de minimis non curat lex."*

In Tilbury v. Rogers, supra, this Court was forced to reject the application of that doctrine to cases under the Fair Labor Standards Act, because of Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946). In Mabee the court held a publishing company which sent extrastate only one-half of one percent of its newspapers was engaged in the production of goods for interstate commerce within the meaning of the Act. While we persist in our disagreement with that holding, as we stated in Tilbury, Mabee prevents application of the *de minimis* doctrine here.

■ Defendant next contends that the milk sold to Barksdale does not fall within the meaning of "goods" as defined in 29 U.S.C.A. § 203(i).[3] He claims that the Air Force was the ultimate consumer of the milk and that the milk was not "sold" by Barksdale to the airmen and officers from the flight line. Defendant points out that airmen living on base are entitled to the box lunches containing milk without charge. Airmen living off base are given an allotment for meals each day, and officers receive a monthly allotment for subsistence. The airmen living off the base and officers may eat meals prepared by the Air Force on the base and pay a certain rate for them, or they may eat elsewhere, if they choose. Defendant contends that when an airman living off the base or an officer eats a meal on the base, he does not "buy" the meal, but he simply returns to the Air Force what he had been allotted for that meal.

We think the fallacy in defendant's argument is the fact that the allotment of meal money to airmen and officers and its return to the Air Force when they eat a meal on the base is not merely a "bookkeeping transaction." The allotted money is paid to the airmen and officers, and

they may spend the money for meals consumed on the base, or they may choose to spend the money for anything else they choose. They have complete ownership of the money, an when they eat a meal, they buy it, whether on the base or at a commercial establishment. Therefore, the ultimate consumers of the milk delivered by defendant to Barksdale are the men who purchase and consume the box lunches prepared by the in-flight kitchen.

This fact sufficiently distinguishes this case from James V. Reuter, Inc., v. Walling, 137 F.2d 315 (5 Cir. 1943), relied on by defendant. Moreover, that decision was vacated by the Supreme Court in Walling v. James V. Reuter, Inc., 321 U. S. 671, 64 S.Ct. 826, 88 L.Ed. 1001 (1944).

■ It is not necessary that the transportation by the Air Force of the milk produced by defendant be for the purpose of sale or exchange. By way of the definition of "commerce" in 29 U.S.C.A. § 203(b) Congress specifically included within coverage of the Act employees engaged in the production of goods for interstate *transportation.* Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017 (1950).

■ We therefore conclude that defendant is engaged in production of goods for interstate commerce. However, it is equally clear that application of the Act to particular employees depends upon the character and extent of their activities, not those of their employer. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942); Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83 (1942). It remains for our decision, then, whether defendant's employees spend a "substantial" part of their time engaged in producing half pints of milk for interstate transportation, and, if they do, whether they fall within any exclusions of the Act.

---

3. "(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

The Secretary contends that defendant violated Sections 206 and 207 of the Act with respect to Marcus Brown. Brown drove a route truck which delivered ice cream to Barksdale each morning. He then returned to the plant where he apparently did various odd jobs. He sometimes cleaned the office and emptied trash; he helped unload incoming shipments of goods about twice a month; he washed trucks on Saturdays, and he sometimes ran a bottle washer. He testified that he had nothing to do with the half pint cartons of milk at any time, either in producing or delivering milk. We conclude that Marcus Brown did not spend a substantial part of his time in production of goods for interstate commerce and that he was not subject to either the minimum wage or overtime provisions of the Act.

The Secretary claims a minimum wage violation as to Rufus Brown. However, defendant testified that Rufus Brown stopped working for him September 2, 1961, and that he was not working during the period for which violation is claimed. Since this testimony is uncontradicted, we hold that Rufus Brown was not covered by the Act during the period alleged.

Minimum wage violations are claimed as to Harry Lee Daniels, Jack Moore and Floyd Deming. Daniels was a helper in the plant, and his job was to run the machine that filled 6 gallon containers with milk. He also helped move half gallon containers of milk to the cooling vault and sometimes loaded half gallon containers on a truck to be delivered to Barksdale. However, he had nothing to do with the production, loading or delivery of the half pints to Barksdale.

Moore moved filled gallon, half gallon and six gallon milk cartons from the machines to the cooling vault, and he helped unload deliveries of milk to the plant, none of which were shown to be interstate in character. Once during his six week employment period he helped unload a shipment of out-of-state goods. He also helped load a delivery truck bound for Barksdale, but only occasionally.

Deming ran a bottle-washing machine during part of his employment, and then he ran machines filling glass bottles and half gallon paper cartons. About once a week he helped load a truck for delivery to Barksdale, and he occasionally relieved the operator of the machine filling the one-half pint cartons. However, he did not help regularly on the half pint machine. He also occasionally helped put out trash and participated in the cleaning of the dairy.

Plaintiff has not shown that Daniels, Moore or Deming regularly spent a substantial part of their time performing any work connected with production or delivery of the half pints of milk delivered to Barksdale. Therefore, we conclude that they were not engaged in the production of goods for commerce and are not covered by the Act.

Minimum wage violations also are claimed on behalf of Alton Taylor and Henry Allen. There can be little doubt that these employees spent a substantial part of their time producing goods for commerce. Taylor daily ran the machine which filled the half pint paper cartons with milk for use by Barksdale. Henry Allen regularly drove the truck which delivered the half pint cartons to the in-flight kitchen at Barksdale.[4] Both are covered under the Act, and neither was paid the minimum wage during the period claimed.

The Secretary claims a minimum wage violation as to Ira Hill. Hill ran the bottle washing machine, helped on the machine filling half gallon containers, and moved filled milk containers

---

4.  29 U.S.C.A. § 203(j) provides, " * * * for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, *transporting*, or in any other manner working on such goods, * * * in any State." (Emphasis added.)

from the machines to the cooling vault. Daily he helped load the half pints on the Barksdale truck, although this took only five or ten minutes of his time. He testified that he and Taylor and Joe Williams cleaned up the plant every day and that this took them approximately an hour and a half or two hours. It is clear that cleaning of the plant is related directly to production of the half pints of milk for interstate commerce. As a result of this activity and his loading of the half pints for delivery to Barksdale, we think Hill spent a substantial portion of his time in production of goods for interstate commerce. He was not paid the minimum wage during this period, so defendant is guilty of a violation of Section 206 as to Hill.

Joe Williams helped run the bottle washer, rolled milk cartons into the vault, and helped load milk trucks. He helped load the Barksdale truck with half pint cartons every day. He testified that he helped clean up the plant every evening, and while he said he spent only ten minutes hooking up the pipes to clean the pasteurizer, we think his testimony, read in the light of that of Ira Hill,

shows that he spent considerable time each evening cleaning the plant.[5] As was true with Hill, there has been a violation of Section 206 as to Williams.

The Secretary also claims a violation of the overtime provision in Section 207 as to Williams. However, we agree with defendant that Williams falls within the exemption from overtime as provided in Section 207(c).[6] Since he was engaged in "first processing" of milk into dairy products, he is exempt from the overtime provision.[7]

George Pitner was defendant's plant superintendent from September 11, 1961, to July 12, 1963, and was paid a salary of $450 per month. No minimum wage violation is claimed as to him, but the Secretary claims that Pitner was not paid overtime in accordance with the Act during this time. Defendant contends that Pitner is excluded from overtime coverage under the Act by virtue of the exemption provided in Section 213(a)(1). He argues that Pitner qualifies as a supervisor under the regulations promulgated by the Department of Labor (29 C.F.R. § 541.1),[8] which fur-

---

5. The Secretary contends that all the employees who worked in the plant were required to clean the plant premises, pipes, vats and other utensils each day and that they are covered by the Act because of this work. However, the record fails to show that all employees participated in these cleaning operations. Ira Hill testified that he and Alton Taylor and Joe Williams cleaned the plant each day, and Williams testified that he helped clean the plant daily. Taylor was not asked whether he helped clean the plant. While Deming testified that "all the boys in there cleaned up the dairy," in light of Williams's testimony we hold that plaintiff has not proved that all the employees participated in the cleaning operation. Even if they did, there was no showing that they spent a substantial part of their time doing so.

6. 29 U.S.C.A. § 207(c) provides:
"In the case of an employer engaged in the first processing of milk, buttermilk, whey, skimmed milk, or cream into dairy products, * * * the provisions of subsection (a) of this section shall not apply to his employees in any place of

employment where he is so engaged; * * *."

7. The Secretary did not claim a violation of the overtime provisions of Section 207 as to Allen, Rufus Brown, Daniels, Deming, Hill, Moore, and Taylor.

8. 29 C.F.R. § 541.1 provides:
"The term 'employee employed in a bona fide executive * * * capacity' in section 13(a)(1) of the act shall mean any employee:
"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
"(b) Who customarily and regularly directs the work of two or more other employees therein; and
"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
"(d) Who customarily and regularly exercises discretionary powers; and

ther defines the employees covered by Section 213(a)(1). In order to be exempt under that provision, it is necessary that the employee meet all of the requirements of Section 541.1. Helliwell v. Haberman, 140 F.2d 833 (2 Cir. 1944).

Under 29 C.F.R. § 541.1(e), an employee is not exempt as a supervisor if he spends more than 20 percent of his time in a non-supervisory capacity. Pitner testified that he spent about 25 percent of his time running the pasteurizing machine. This task consisted mostly of checking gauges and adjusting valves and did not require his constant attention. In addition to this, however, Pitner made ice cream mix, which took him approximately an hour and a half each week. He spent some time receiving and unloading shipments of goods for use at the plant; he made minor repairs to some of the machinery, and he received the incoming shipments of milk. Pitner stated that his job at the dairy was that of a working supervisor. In light of these facts, we think Pitner spends more than 20% of his time in a non-supervisory capacity and that he does not fall within the exemption from overtime provided in Section 213(a)(1).

■ Defendant also contends that Pitner is exempted from the overtime provisions by virtue of the "first processing" exemption in Section 207(c). It has been held that employees who spend part of their time in work that is exempt under this section and part of their time in non-exempt work are entitled to overtime for all the work they perform.[9] Hammonds v. J. W. Broom &

Sons, 195 F.Supp. 504 (W.D.N.C.1961); McComb v. Del Valle, 80 F.Supp. 945 (D. C. Puerto Rico 1948); Fleming v. Swift & Co., 41 F.Supp. 825 (N.D.Ill.1941). Pitner's work in making the ice cream mix each week does not fall within the first processing exemption. Walling v. Bridgeman-Russell Co., 2 WH Cases 785 (D.C.Minn.1942). In addition, the time he spent in receiving shipments of goods for use at the plant does not constitute "first processing." Because of this non-exempt time, under the authorities cited above, Pitner is not entitled to the first processing exemption. Defendant, therefore, violated Section 207 of the Act as to Pitner.

In summary, therefore, we find that defendant has violated the minimum wage provisions of Section 206 as to James Chelette, Alton Taylor, Henry Allen, Ira Hill and Joe Williams. He has violated the overtime provisions of Section 207 as to George Pitner. These violations constituted a violation of Section 215(a)(2) of the Act, during the period defendant delivered the half pints of milk to Barksdale.

■ Section 217 gives the Court full power to order restitution of the amounts due these employees for minimum wage and hour overtime violations. The purpose of an injunction to restrain the withholding of wages due is not to collect a debt owed by the employer to his employee but to correct a continuing offense against the public interest. Wirtz v. Jones, 340 F.2d 901 (5 Cir. 1965). We think an injunction to restrain the with-

---

"(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided,* That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment-or a physically separated branch establishment, or who owns at least a 20-percent interest in the

enterprise in which he is employed; and

"(f) Who (except as provided in § 541.5b of this part) is compensated for his services on a salary basis at a rate of not less than $100 per week (or $75 per week if employed in Puerto Rico, the Virgin Islands, or American Samoa) exclusive of board, lodging, or other facilities: * * *."

9. This rule would be applicable to Joe Williams also, but plaintiff did not show that Williams performed any non-exempt work.

holding of wages due is a proper remedy here.[10]

The Secretary contends he is entitled to an injunction against future violations of the Act. Defendant's business operations were investigated by representatives of the Department of Labor on two previous occasions. On each occasion the Department advised defendant of their position that two of his employees, Chelette and Pitner, were covered under the Act. Defendant both times refused to make restitution for any back wages claimed to be due, and he has failed to comply with the Act as to these two employees. However, he maintained all along that these two employees were not covered by the Act. Although we now hold that they are covered, that decision was not reached with ease. It was only after much careful study of the authorities and the evidence here that we reached that conclusion.

As to the other employees whom we hold to be covered by the Act, no previous coverage was asserted by the Secretary in either of the two prior investigations. In this aspect of coverage, too, the question of defendant's liability was far from clear.

Since September 19, 1963, defendant has been maintaining accurate work-time cards with a time clock, and, with the exception of the overtime for Pitner, he has paid his employees in accordance with the Act. We think this evidences his intention to comply with the Act in the future, and we have every reason to believe he will do so. The discretion vested in the trial court in granting injunctions under the Act was well pointed out in Mitchell v. Chambers Const. Co., 214 F.2d 515 (10 Cir. 1954), where the court said:

"* * * Coverage under the Act does not ipso facto require the court to grant an injunction against future violations, even in the face of past violations. The trial court is empowered to mold each decree to the necessity of each case. Walling v. Mid-Continent Pipe Line Co., 10 Cir., 143 F.2d 308; Walling v. Shenandoah-Dives Mining Co., 10 Cir., 134 F.2d 395. 'His discretion is necessarily broad and a strong showing of abuse must be made to reverse it.' United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303. The purpose of an injunction in a case of this kind is to prevent future violations in the public interest, not to punish for past transgressions. Equity will not do a useless or vain thing, and in the absence of some likelihood or probability that the violations will recur, the court is fully justified in refraining from entering an empty decree. See United States v. W. T. Grant Co., supra."

For these reasons, and for those we gave in the similar case of Tilbury v. Rogers, supra, the prayer for an injunction against future violations of the Act is denied. Restitution will be ordered after additional briefs are filed concerning the amounts due the employees covered.[11]

---

10. Defendant has requested that, in the event we find restitution is due, the parties be permitted to file supplemental briefs as to the amounts due. Because of the volume of testimony on this issue and the confusion reflected in the testimony of the witnesses as to the number of hours they worked, this additional briefing time will be granted. In this connection we point out that Taylor, Allen, Hill, Williams and Pitner were covered during the period defendant delivered the half pints pursuant to his contract with Barksdale, from April 25, 1962, through March 24, 1964. Since defendant has paid the minimum wage and overtime to Taylor, Allen, Hill and Williams since September 19, 1963, the wages that remain to be computed are those due these employees between April 25, 1962, and September 19, 1963. Pitner has not been paid overtime at all, so the wages due him should be computed between April 25, 1962, and March 24, 1964, or as long as defendant continued to deliver half pints to the in-flight kitchen at Barksdale.

Briefs on these questions (unless the parties are able to agree upon the proper amounts due), should be filed by plaintiff within fifteen days, and by defendant within fifteen days thereafter.

11. See fn. 10, supra.