**Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**CARL ROESSLER, INCORPORATED, Defendant.**

Civ. A. No. 14200.

United States District Court, D. Connecticut.

July 3, 1973.

William J. Kilberg, Solicitor of Labor, Albert H. Ross, Regional Solicitor, U. S. Dept. of Labor, by Paul J. Katz, Brockton, Mass., for plaintiff.

Slavitt & Connery, Norwalk, Conn., by Frank W. Murphy, Norwalk, Conn., for defendant.

LUMBARD,* Circuit Judge:

The Secretary of Labor brings this action under 29 U.S.C. § 217 against Carl Roessler, Inc., to restrain defendant from continuing to withhold overtime wages that the Secretary asserts are due to five of defendant's past and present employees under the Fair Labor Standards Act (Act), 29 U.S.C. § 201 et seq.,[1] and to enjoin defendant from violating the overtime and recordkeeping provisions of the Act[2] in the future. The defendant corporation is a wholesale meat producer whose principal place of business, at all times pertinent to this action, was located at 915 State Street in New Haven, Connecticut.

The five employees affected by this action are Louis Aceto, Robert McKernan, Joseph Abbatello, Ernest Pauluccy, and Frederick Hart. The Secretary's position is that none of these employees was properly compensated for overtime worked and, thus, that back wages are due these employees in the aggregate amount of $4,635.12, plus interest of $880.67. As to all the employees except Hart, defendant admitted the periods of employment that are relevant to this action.[3] As to Hart, his

---

* Sitting by designation.

1. The particular provision dealing with overtime wages is 29 U.S.C. § 207.

2. 29 U.S.C. § 211(c).

3. These periods of employment are indicated by workweek ending dates and were as follows:

| Abbatello | 7/11/70–10/10/70 |
| Aceto | 10/19/68– 8/15/70 |
| McKernan | 8/20/70–10/10/70 |
| Pauluccy | 1/17/70–10/10/70 |

testimony at trial, uncontradicted by defendant, was that defendant employed him from March 1969 to March or April 1970. Each of these employees was paid a fixed salary every week and was paid no overtime for hours worked in excess of forty. The evidence indicated that no records of hours worked, straight time pay, and overtime pay were kept for these employees.

Two of the employees, Aceto and McKernan, held the same position with defendant, Data Processing Manager, McKernan succeeding Aceto in that position. Defendant argues that it was not required to pay overtime compensation to these employees because the position they held was exempt from the overtime provisions of the Act. Essentially, defendant contends that the position of Data Processing Manager is a bona fide executive and/or administrative position and as such is exempted from the overtime provisions by 29 U.S.C. § 213. Section 213 provides that bona fide executive and administrative positions are exempt, but it leaves it to the Secretary to define by regulation what constitutes such a position, which the Secretary has done in Part 541 of 29 C.F.R. Thus, with respect to Aceto and McKernan, the parties' arguments revolve around whether the post of Data Processing Manager meets the tests established by the regulations for an executive or administrative position.

Defendant concedes that Abbatello, Pauluccy, and Hart held positions at the times relevant to this case that were not exempt from the overtime provisions of the act. Abbatello was hired as a management trainee and was paid a fixed salary of $150 per week. He testified that his weekly work hours fluctuated and exceeded 40. Pauluccy was a cost accountant, described as a bookkeeper-clerk by defendant, and received a constant weekly salary of $154. He testified that the number of hours he worked varied and exceeded 40. Hart was employed as a maintenance man and was paid $150 per week, later increased to $160. His testimony was that his hours also fluctuated and often exceeded 40 per week.

Essentially, defendant's position with respect to Abbatello, Pauluccy, and Hart is that any violations of the Act were merely technical and more a matter of bookkeeping than of substance. Its contention is that each employee was hired to work a fixed number of hours and to perform specific duties in return for a constant weekly salary. Defendant argues that it could have achieved this same arrangement while complying with the Act merely by hiring the employees in a manner that came within 29 U.S.C. § 207(e) and maintaining records that indicated straight-time pay up to 40 hours and overtime pay for time worked thereafter. Therefore, defendant contends that these employees should not receive a windfall merely because of a technical violation stemming from the manner in which they were hired.

With regard to his prayer for an injunction against future violations of the Act, the Secretary introduced evidence of six earlier wage-hour investigations of defendant at the office in question between 1956 and 1967. The Secretary's position is that the defendant has shown a disregard of the Act and the regulations promulgated thereunder and, thus, that an injunction against such future activity is warranted. On the other hand, the defendant asserts that it has made a good faith attempt to comply with the Act, that the Secretary has shown neither that any violations were wilful nor that there is any intention or probability that the defendant will violate the Act in the future, and thus that no injunction should issue.

### I.

The first question is whether the position of Data Processing Manager at the time it was held by Aceto and McKernan, respectively, was exempted from the provisions of the Act because it was an executive or administrative post. As indicated earlier, the tests for determining this are established by regulations promulgated by the Secretary

pursuant to legislative mandate. In 29 C.F.R. § 541.1, essentially the following test is established for determining whether an individual is employed in a bona fide executive capacity:

(1) His primary duty must consist of the management of the enterprise or of a department or subdivision thereof; and

(2) He must customarily and regularly direct the work of two or more other employees; and

(3) He must have authority to hire and fire other employees or to make recommendations on such matters that will be given particular weight; and

(4) He must customarily and regularly exercise discretionary power; and

(5) He must not devote more than 20 per cent of his time to activities not directly related to those described in paragraphs (1) through (4); and

(6) He must be paid at least $150 per week.[4]

These requirements are themselves further defined in the regulations.

■■■ At the outset, the court notes that the burden is on the defendant to show that the position at issue fell within the claimed exemption. Walling v. General Industries Co., 330 U.S. 545, 548, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); Helliwell v. Haberman, 140 F.2d 833, 834 (2 Cir. 1944). Moreover, each requirement must be fulfilled before the exemption can be applicable because the elements are in the conjunctive. Despite the impressive title of the position, the defendant has not borne its burden of showing that the Data Processing Manager was a bona fide executive position under the statute and regulations. Of the six requirements listed above, the evidence indicates that this position did not comply with the first, second, and fourth requirements. The testimony of Aceto and McKernan indicates clearly that the primary duty of the position was not management but the operation of relatively uncomplicated data process-

ing equipment, and the court so finds. Similarly, although the evidence indicated that the position entailed supervision of one full-time and one part-time employee, this does not fulfill the second requirement since 29 C.F.R. § 541.105 clearly states that "two or more employees" refers to full-time employees or their equivalent in part-time employees.

Finally, the court finds that the evidence does not support the contention that this position entailed the customary and regular exercise of discretionary powers. As stated in 29 C.F.R. § 541.-207, "the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." Moreover, "the term . . implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Although this regulation deals particularly with the administrative exemption, there is no reason to think that this requirement, which is necessary for both exemptions, should be interpreted differently for the executive exemption than for the administrative. From the evidence adduced at trial, the court finds that the defendant has failed to show by a preponderance of the evidence that the position of Data Processing Manager satisfied this element of the exemption. The picture painted by the evidence is rather of a position characterized by the operation of data processing machinery, the transcription and tabulation of figures, and other routine and relatively manual chores.

The administrative exemption is governed by 29 C.F.R. §§ 541.2 and 541.201 et seq. There is no need for an extended discussion of the elements thereof because the court's discussion above of the question of the customary exercise of discretionary powers is dispositive. This element of the executive exemption is also essential to the administrative

---

4. After the violations alleged here, the salary requirement was raised to $200 per week.

exemption. Since the court has found that element lacking here, the exemption is inapplicable. Accordingly, although the position carries the title of "Data Processing Manager," the court finds it not to be exempt from the overtime provisions of the Act.

## II.

■ Defendant's contention that any violations of the Act with respect to Abbatello, Pauluccy and Hart were merely technical and not substantive is wholly without merit. An essential ingredient in support of defendant's contention is lacking: an agreement between employer and employee prior to the performance of the services that specifies a basic hourly rate of pay and not less than one and one-half times that rate for each hour of overtime. See 29 U.S.C. § 207(e) and (f). In the absence of such an agreement, it is well established that the payment of a flat weekly salary will not be deemed to include the statutorily required overtime premium for hours worked in excess of 40. Overnight Motor Transportation Co. v. Missel, 316 U. S. 572, 581, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942); Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 93, 63 S.Ct. 125, 87 L.Ed. 83 (1942).

In addition to 29 U.S.C. § 207(e), defendant also relies on several regulations promulgated by the Secretary, 29 C.F.R. §§ 778.113 and 778.114. However, these regulations can be of no assistance to defendant because all they purport to do is to establish a means of determining an employee's stright-time pay, from which the overtime premium is calculated, when an employee works for a fixed salary.

## III.

■■ In light of the foregoing discussion, it is clear that the Secretary must recover on his claim for back overtime wages if he has carried his burden to show the number of overtime hours worked. The burden to keep accurate time records is on the employer. 29 U.

S.C. § 211(c); 29 C.F.R. § 516.2(a)(7); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). In a case such as this where the employer has utterly failed to keep any records of time worked, the court may make a determination on this issue if there is information available, such as the reasonable and credible estimates of the employees.

[W]hen the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employers' records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on the employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produced sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

Anderson v. Mt. Clemens Pottery Co., supra, p. 687, 66 S.Ct., p. 1192.

Each of the employees involved here testified with regard to the number of hours they worked each week during the period of their employment with defendant and were able to approximate an average workweek in terms of hours. Each employee gave a written statement to the Department of Labor on the number of hours in his workweek. With the

exception of Abbatello, the court examined the statement of each employee. On the matter of hours worked, the statements of Pauluccy, Hart and McKernan were consistent with the statements made to the department. However, Aceto's statement to the department was that his workweek averaged 56 hours, whereas at trial he testified that the figure was at various points 60 and 65 hours.

Ronald Gilbert, the Compliance Officer of the Labor Department who conducted the investigation of defendant, testified that his calculation of the overtime pay due was based on the statements given by the employees to the department. In the case of Aceto, Gilbert initially utilized the 56 hour figure after speaking with Aceto and two of his co-workers; at trial, the Secretary sought to increase the calculation of Aceto's overtime in light of his testimony that his workweek was 60 to 65 hours. In the case of Pauluccy and Abbatello, Gilbert testified that he based his calculations on information given to him by the employees and the comptroller of defendant corporation. The calculation with regard to McKernan was based on his statement after the department received the statements of two of his co-workers. As to Hart, the calculation applied the information that he gave in his statement.

■ Defendant presented no contrary evidence regarding the hours worked by these employees. The court substantially credits the testimony given by the employees on this issue, except in the case of Aceto where the court finds that the 56 hour figure should be used. Accordingly, in accordance with the Secretary's calculations, the following amounts are due from the defendant with regard to each employee:

| | |
|---|---|
| Abbatello | $ 75.00 |
| Aceto | 2,640.20 |
| Hart | 517.45 |
| McKernan | 158.25 |
| Pauluccy | 385.86 |

In addition, defendant shall pay interest of 6 per cent on this award from the median date of the violations of the overtime provisions. Hodgson v. Corning Glass Works, 330 F.Supp. 46, 51 (W.D.N.Y.1971), aff'd as modified, 474 F.2d 226 (2 Cir. 1973); Hodgson v. American Can Co., 440 F.2d 916, 922 (8 Cir. 1971).

## IV.

■■ There remains the Secretary's prayer for an injunction against future violations of the Act. This is a matter within the sound discretion of the court. Wirtz v. Atlas Roofing Manufacturing Company, 377 F.2d 112 (5 Cir. 1967). Among the factors to be considered in the exercise of this discretion are the past actions of non-compliance by the employer. Wirtz v. Harper Buffing Machine Company, 280 F.Supp. 376 (D. Conn.1968); Mitchell v. Hodges Contracting Company, 238 F.2d 380 (5 Cir. 1956). Compliance Officer Gilbert's investigation of defendant in 1967 disclosed violations of the overtime provisions of the Act that were similar to those subsequently uncovered in 1970. These violations found in 1967 involved claims of exemption for a maintenance man and a management trainee, very similar to two of the employees involved here. At the end of the 1967 investigation, Gilbert had a lengthy discussion with officials of defendant corporation during which he brought to their attention the violations he found and explained how they could be corrected.

■ In addition, the Secretary presented evidence of earlier investigations of overtime violations by the defendant, several of which resulted in payments by defendant to the employees, and of several other discussions with officials of defendant corporation regarding the proper method of complying with the overtime provisions of the Act. It is significant that, even after these prior investigations and discussions with Labor Department personnel, the de-

fendant still did not keep records of the hours worked by the employees involved in this case. The court feels that the Secretary has made a sufficient showing of past noncompliance and disregard of the Act to justify the issuance of an injunction. That the defendant may presently be complying or promising compliance with the Act is not determinative. See Wirtz v. Hardin & Co., 253 F.Supp. 579 (N.D.Ala.1964), aff'd per curiam, 359 F.2d 792 (5 Cir. 1966).

As the court stated in Harper Buffing, supra, p. 382 of 280 F.Supp.:

> [I]n determining whether to issue such an injunction, the light burden it would impose on the employer must be weighed against the heavy administrative and investigative responsibilities which non-issuance would place on the Department of Labor.

Moreover, as the Fifth Circuit stated in Mitchell v. Pidcock, 299 F.2d 281, 287 (1962):

> The injunction subjects the defendants to no penalty, to no hardship. It requires the defendants to do what the Act requires anyway—to comply with the law. True, it subjects them to correction by contempt proceedings. If this is a hardship, they may avoid it by respecting the law . . . . [T]he manifest difficulty of the Government's inspecting, investigating, and litigating every complaint of a violation weighs heavily in favor of enforcement by injunction—*after* the court has found an unquestionable violation of the Act.

Accordingly, in light of the Secretary's convincing showing of past noncompliance with the Act and of past explanations given to defendant of what was necessary to bring it into compliance, the court concludes that an injunction against any further violations is appropriate and should issue.

The foregoing opinion shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.