SHEARER v E. BRAME TRUCKING COMPANY, INC.

1. LABOR RELATIONS—OVERTIME COMPENSATION—FAIR LABOR STAN-
    DARDS ACT—STATE COURTS.

    The right to overtime pay, under the Fair Labor Standards Act,
    can be enforced in any state court of competent jurisdiction (29
    USCA 216[b]).

2. LABOR RELATIONS—INTERSTATE COMMERCE—OVERTIME COMPENSA-
    TION—FAIR LABOR STANDARDS ACT.

    All employees engaged in interstate commerce who in a work-
    week work in excess of 40 hours are to be paid for the hours in
    excess of 40 at a rate not less than 1-1/2 times the regular rate
    at which they are employed unless specifically exempted by a
    provision of the Fair Labor Standards Act (29 USCA 201 *et
    seq.).*

3. LABOR RELATIONS—OVERTIME COMPENSATION—EXCEPTIONS—BONA
    FIDE EXECUTIVES—FAIR LABOR STANDARDS ACT.

    A person employed in interstate commerce is within one of the
    exceptions to the time-and-a-half requirements for hours
    worked in excess of 40 in a workweek set forth by the Fair

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur 2d, Labor and Labor Relations §§ 1542, 1548 *et seq.*
[3, 4] 48 Am Jur 2d, Labor and Labor Relations §§ 1572 *et seq.,* 1607
    *et seq.,* 1631, 1632.
[3–10] What employees are engaged in interstate commerce, or in the
    production of goods for interstate commerce, within Fair Labor
    Standards Act. 87 L Ed 87.
    Who is employed in "executive or administrative capacity" within
    exemptions from minimum wage and maximum hours provisions
    of Fair Labor Standards Act. 40 ALR2d 332.
[5] 48 Am Jur 2d, Labor and Labor Relations §§ 1602, 1697.
[5, 7] Provision of Fair Labor Standards Act for increased compensa-
    tion for overtime. 152 ALR 1030, s. 169 ALR 1307.
[6] 5 Am Jur 2d, Appeal and Error § 948 *et seq.*
[7] 48 Am Jur 2d, Labor and Labor Relations § 1697.
[8, 9] 48 Am Jur 2d, Labor and Labor Relations § 1699.
[9, 10] 48 Am Jur 2d, Labor and Labor Relations §§ 1709, 1715.
    Criminal sanctions of Fair Labor Standards Act. 97 L Ed 267.

Labor Standards Act where that person is employed in a bona fide executive capacity (29 USCA 213[a][1]).

4. LABOR RELATIONS—BONA FIDE EXECUTIVES—TESTS—OVERTIME COMPENSATION—EXCEPTIONS.

There are two tests for determining whether an employee fits within the bona fide executive exemption to the overtime wage requirements for the years 1966 through 1969; a "long" test for employees on a salary basis at a rate of not less than $100 nor more than $150 per week and a "short" test for employees who are compensated at a rate of $150 or more per week (29 CFR 541.1 [1967]).

5. LABOR RELATIONS—BONA FIDE EXECUTIVES—BURDEN OF PROOF—OVERTIME COMPENSATION—FAIR LABOR STANDARDS ACT.

An employer has the burden of establishing that an employee falls within the executive exception to the overtime provisions of the Fair Labor Standards Act; in meeting this burden of proof, the employer must show that all conditions set forth in the regulations are met since they are stated in the conjunctive (29 USCA 201 *et seq.;* 29 CFR 541.1 [1967]).

6. LABOR RELATIONS—OVERTIME COMPENSATION—BONA FIDE EXECUTIVES—FAIR LABOR STANDARDS ACT—APPEAL AND ERROR.

A trial court's determination that an employee was not a bona fide executive for purposes of the overtime pay requirements of the Fair Labor Standards Act should be reversed by an appellate court only if it is found to be clearly erroneous.

7. LABOR RELATIONS—OVERTIME COMPENSATION—NUMBER OF HOURS WORKED—RECORDS—FAIR LABOR STANDARDS ACT.

A trial court properly based its determination of the number of hours of overtime compensation due to a plaintiff upon the plaintiff's own estimate where the defendant employer failed to keep records of the hours worked by the plaintiff, as required by the Fair Labor Standards Act (29 USCA 211[c]).

8. LABOR RELATIONS—OVERTIME COMPENSATION—STATUTE OF LIMITATIONS—WILLFUL VIOLATIONS—FAIR LABOR STANDARDS ACT.

A two-year statute of limitations period applies to all actions to recover unpaid overtime compensation under the Fair Labor Standards Act, except that a three-year period will be applied where the cause of action arises out of a willful violation of the act.

9. LABOR RELATIONS—OVERTIME COMPENSATION—WILLFUL VIOLA-
TIONS—STANDARD OF DETERMINATION—FAIR LABOR STANDARDS
ACT—STATUTE OF LIMITATIONS.

The standard for determining the willfulness of an employer's
violation of the overtime pay requirements of the Fair Labor
Standards Act is whether the employer knew or had reason to
know that his conduct was governed by the FLSA; where an
employer admittedly used a method of payment aimed at
complying with the FLSA because of prior wage-hour investiga-
tions, the record supports a finding that the present violation
was "willful" and therefore the three-year statute of limitations
period applies (29 USCA 255[a]).

10. LABOR RELATIONS—OVERTIME COMPENSATION—LIQUIDATED DAM-
AGES—FAIR LABOR STANDARDS ACT—TRIAL COURT DISCRETION—
BURDEN OF PROOF.

An employer who violates the overtime compensation provisions
of the Fair Labor Standards Act may be liable to an employee
for an additional amount, equal to the unpaid overtime com-
pensation, as liquidated damages; however, if the employer
shows to the satisfaction of the court that the act or omission
giving rise to such action was in good faith and that he had
reasonable grounds for believing that his act or omission was
not a violation of the act, the court may, in its sound discretion,
award no liquidated damages or award any amount thereof not
to exceed the amount specified by the act (29 USC 216[b], 29
USC 260).

Appeal from Macomb, Hunter D. Stair, J. Sub-
mitted March 8, 1976, at Lansing. (Docket No.
23466.) Decided June 14, 1976. Leave to appeal
denied, 397 Mich —.

Complaint by Leonard Shearer against E. Brame
Trucking Company, Inc., to recover unpaid over-
time compensation allegedly due to the plaintiff
from the defendant, and to recover liquidated
damages in the same amount. Judgment for plain-
tiff on the recovery of overtime pay, but without
liquidated damages. Defendant appeals and plain-
tiff cross-appeals. Judgment affirmed as to award
of overtime compensation and reversed as to the
denial of liquidated damages.

*Johnston & Wendt* and *Towner, Rosin, York & McNamara,* for plaintiff.

*Perica, Breithart, Wolanin & Carmody,* for defendant.

Before: M. J. KELLY, P. J., and BRONSON and W. R. PETERSON,* JJ.

BRONSON, J. Pursuant to the Fair Labor Standards Act of 1938 ("FLSA"),[1] plaintiff brought suit to recover unpaid overtime compensation allegedly due to him by defendant, and to recover an equal amount as liquidated damages. The circuit court judge,[2] sitting without a jury, entered judgment in favor of plaintiff for the amount of overtime pay, $5,243.31, but he did not award any liquidated damages. Both parties claim error here.

I.

The FLSA creates the right to a minimum overtime pay rate for most employees. The general section of the act, 29 USCA 207, is applicable to all employees engaged in interstate commerce not specifically exempted by a later section. It provides as follows:

"(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce * * * for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] 52 Stat 1060 (1938), as amended, 29 USCA 201 *et seq.*

[2] Section 216(b) of the Fair Labor Standards Act provides that the right to overtime pay can be enforced in any state court of competent jurisdiction.

the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Defendant contends that plaintiff fits within the "executive" exception found in 29 USCA 213(a)(1). The trial judge rejected that view, and we think that he ruled correctly.

Section 213(a)(1) creates an exemption for a person employed in a "bona fide executive * * * capacity", but leaves the definition and limitations of that term to regulations of the Secretary of Labor. Pursuant to that authority, the Secretary has promulgated detailed regulations setting forth a set of factors which must be present before an employee will be considered a "bona fide executive" for purposes of the act.

The regulations contain both a "long" and "short" test for the executive exemption.[3] The "long" test requires the employee to be one:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20 percent * * * of his hours of work in the workweek to activities which are not directly and closely related to the per-

---

[3] *See, generally, Wainscoat v Reynolds Electrical & Engineering Co, Inc,* 471 F2d 1157 (CA 9, 1973).

formance of the work described in paragraphs (a) through (d) of this section * * * and

"(f) Who * * * is compensated for his services on a salary basis at a rate of not less than $100.00 per week." 29 CFR 541.1 (1967).[4]

The "short" test derives from a proviso following subsection (f) above:

*"Provided,* That an employee who * * * is compensated on a salary basis at a rate of not less than $150 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section." 29 CFR 541.1 (1967).[5]

Consequently, when the employee is compensated at a rate of $150 per week or more, the employer need only show that the first two requirements of the "long" test have been met.

The employer has the burden of establishing that an employee falls within the executive exception to the FLSA, *Walling v General Industries Co,* 330 US 545, 547–548; 67 S Ct 883, 884; 91 L Ed 2d 1088, 1090–1091 (1947), *Idaho Sheet Metal Works, Inc v Wirtz,* 383 US 190, 206; 86 S Ct 737; 15 L Ed 2d 694 (1966). In addition, the conditions in the regulations are stated in the conjunctive, so the employer must show that all are met in order to sustain that burden of proof, *Singh v Land S E A*

[4] Plaintiff claims wages for the years 1966 through 1969. The subsections quoted here were not changed by the 1967 amendments. The minimum salary in § (f) was changed to $125 per week in 1970, but that change does not apply here.

[5] This subsection was not changed by the 1967 amendments. In 1970, the salary amount was changed to $200 per week.

*Corp,* 52 Mich App 589, 593; 218 NW2d 45 (1974), *Brennan v Carl Roessler, Inc,* 361 F Supp 229, 232 (DC Conn, 1973), *Rankin v Jonathan Logan, Inc,* 98 F Supp 1 (DC NJ, 1951).

The trial judge here applied the "long" test and specifically found that defendant did not sustain its burden of proof as to subsections (a), (b), (c), and (e). Since it was undisputed that plaintiff earned more than $150 per week, the employer here should only have been required to show that the conditions of the "short" test were fulfilled. However, because we determine that the court's findings as to subsections (a) and (b) are fully supported by the record, we affirm the ruling that plaintiff was not engaged in a "bona fide executive capacity".

At the trial, plaintiff testified that he was hired as a welder in 1960 by defendant trucking company, repairing the trucks as they were brought into the main garage. He stated that he continued to work primarily as a welder until his employment ended on July 2, 1969, although he spent some time cleaning up around the garage. Plaintiff denied that he was ever in charge of a particular department or area and that he had authority to hire or fire other employees. That testimony was supported by a company driver called by plaintiff, who indicated that the drivers never considered plaintiff to be a garage foreman.

The president of defendant corporation, Edwin Brame, disputed plaintiff's characterization of his role in the company. He testified that plaintiff became garage foreman some time in 1966, with the responsibility for supervising the parts department employee (Vern Hawkins), the mechanic, and the "tire man". Brame did concede, however, that plaintiff spent about 50% of his time actually

welding, and that the change in his job description occurred soon after the company was investigated by the Labor Department. Brame admitted plaintiff could not hire a person on his own, but stated that plaintiff could fire employees—although there had never been an occasion to do so. Vern Hawkins, called by defendant, stated that he considered plaintiff to be his "boss", with a "right" to run the parts department. However, he could not relate any specific instances when such control was actually exercised.

The trial court, resolving the credibility of the parties, found that plaintiff did not have a primary duty of managing a department of the trucking company, and that he did not customarily and regularly direct the work of two or more employees. We cannot say that such a finding of fact was clearly erroneous.[6] Plaintiff strongly maintained that he started as a welder and remained a welder. The president of defendant corporation pointed to the wide-ranging supervisory responsibility possessed by plaintiff on paper, but could show little proof that plaintiff was allowed to exercise that responsibility in practice. We agree with the trial judge that defendant failed to sustain its burden of proving plaintiff fit within an exception to the act.

## II.

Defendant contends that the trial court improperly computed the amount of unpaid overtime compensation. We cannot agree.

Defendant failed to keep records of the hours

---

[6] The appellate courts should reverse the trial court's determination in this area only if it is found to be "clearly erroneous", *Hodgson v Cactus Craft of Arizona*, 481 F2d 464, 466 (CA 9, 1973), *Brennan v General Motors Acceptance Corp*, 482 F2d 825, 829 (CA 5, 1973).

worked by plaintiff, contrary to the FLSA.[7] Consequently, the trial court properly based the number of hours upon plaintiff's own estimate. See, *Purcell v Keegan,* 359 Mich 571; 102 NW2d 494 (1960). In addition, the hourly pay rate was correctly calculated below. The court simply divided the weekly "salary" by the total hours worked by plaintiff each week. The overtime pay rate was then set at one and one-half times that hourly wage. That same method was used in *Brennan v Valley Towing Co, Inc,* 515 F2d 100, 103, 109 (CA 9, 1975), and we approve of its use here.

Defendant argues that the use of a different method of computing the hourly rate was called for under the peculiar circumstances of this case. The company states that plaintiff was paid a set salary based upon 40 hours of regular pay and 19 hours of overtime pay; therefore, plaintiff should only receive that overtime rate for all hours over 59 hours per week. If plaintiff was truly receiving "time-and-a-half" for the 19 overtime hours, we might agree. However, the company office manager's testimony revealed that she was instructed to pay a set salary, and to then work backwards to determine an hourly base rate which would comply with the FLSA requirements. The trial court properly refused to follow this self-serving method of accounting.

### III.

Defendant next argues that the trial judge improperly allowed plaintiff to recover unpaid wages for three years prior to the filing of the complaint. We hold that the trial court properly applied the three-years back section of the FLSA.

---

[7] *See,* 29 USCA 211(c).

As provided in 29 USCA 255(a), a two-year statute of limitations period applies to all actions to recover unpaid overtime compensation, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued". Enigmatically, the trial court applied the three-year limitations period after specifically finding that defendant's violation of the act was not "willful". Despite that inconsistency, we affirm, inasmuch as the record clearly establishes a "willful" violation of the FLSA.

The term "willful" as used here does not connote malice or a bad motive. As pointed out in *Coleman v Jiffy June Farms, Inc,* 458 F2d 1139 (CA 5, 1971), *cert den,* 409 US 948; 93 S Ct 292; 34 L Ed 2d 219 (1972), a trial court's finding of "willfulness" is not inconsistent with its finding that a defendant acted in "good faith" and had "reasonable grounds for believing" his acts were not in violation of the FLSA. The test to determine if defendant's actions were "willful" was summarized as follows:

"The entire legislative history of the 1966 amendments of the FLSA indicates a liberalizing intention on the part of Congress. Requiring employers to have more than awareness of the possible applicability of the FLSA would be inconsistent with that intent. Consequently, we hold that employer's decision to change his employees' rate of pay in violation of FLSA is 'willful' when, as in this case, there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?" 458 F2d, at 1142.

Stated another way, the employer acts willfully

and subjects himself to liability for three years if he "knows, or has reason to know, that his conduct is *governed by* the Fair Labor Standards Act", *Brennan v Heard,* 491 F2d 1, 3 (CA 5, 1974) (emphasis by the Court).[8]

The record clearly shows that Brame Trucking Company knew "that the FLSA was in the picture". The corporation had twice been ordered by the Labor Department, in 1966 and 1967, to pay overtime to plaintiff. Edwin Brame, the president, admitted that the method of payment used was aimed at gaining compliance with the FLSA. Such prior wage-hour investigations were certainly sufficient to put the employer on notice that his conduct was governed by the FLSA. See, for example, *Brennan v General Motors Acceptance Corp,* 482 F2d 825 (CA 5, 1973), *Hodgson v Cactus Craft of Arizona,* 481 F2d 464, 467 (CA 9, 1973). This record supports but one finding—that a "willful" violation of the FLSA was involved. The three-year period was properly applied here.

## IV.

When the FLSA was first enacted, it provided that an amount equal to the unpaid unemployment compensation would be automatically awarded to plaintiff. The appropriate section of the act, 29 USCA 216(b), provided—and also presently provides—as follows:

"(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime

---

[8] This test has been followed in *Dunlop v State of Rhode Island,* 398 F Supp 1269, 1274 (DC RI, 1975), *Brennan v J M Fields, Inc,* 488 F2d 443, 448 (CA 5, 1973), *cert den,* 419 US 881; 95 S Ct 146; 42 L Ed 2d 121 (1974), *Brennan v General Motors Acceptance Corp, supra,* p 828.

compensation, as the case may be, and in an additional equal amount as liquidated damages."

However, in § 11 of the Portal-to-Portal Pay Act of 1947,[9] Congress modified that rule as follows:

"In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."

The trial judge, obviously feeling that the employer's acts fit within the exception, did not award liquidated damages to the plaintiff. The plaintiff now argues that the trial judge erred in failing to award such damages. We must agree.

Although the Portal-to-Portal Pay Act allows the court to not award liquidated damages, its clear language placed the burden of proof upon the employer to prove "good faith" and "reasonable grounds". See, *Singh v Land S E A Corp, supra,* p 597, *Walling v General Industries Co,* 330 US 545, 552; 67 S Ct 883, 886; 91 L Ed 1088, 1092 (1947). In addition, while the award is within the "sound discretion" of the court, the employer must introduce some proof of "good faith" and "reasonable grounds" before the court's discretion is invoked, *McClanahan v Mathews,* 440 F2d 320, 322 (CA 6, 1971), *Rothman v Publicker Industries, Inc,* 201

[9] 29 USCA 260.

F2d 618, 620 (CA 3, 1953), *Singh v Land S E A Corp, supra,* pp 597–598.

We think that the record here is completely lacking in any proofs showing that defendant had reasonable grounds for believing that plaintiff was exempt from the "time-and-a-half" requirements of the FLSA. Defendant presented no evidence to justify its belief that plaintiff, a welder since being hired in 1960, suddenly became a "bona fide executive" in 1966 after a wage-hour investigation. The company president's vague notions that plaintiff was now "supervising" the men in the garage were not enough to sustain defendant's burden of proof.

What was said in *Rankin v Jonathan Logan, Inc,* 98 F Supp 1, 3 (D NJ, 1951), is applicable here:

"As construed by the courts, this fact requires more than a mere contention that the defendant acted in good faith; there is a requirement of some proof of affirmative action by the employer to the end of determining how the employee should be classified and a consequent classification based upon the advice given.

\*    \*    \*

"In this case, there has been no proof adduced by defendant to show in any way that the employer had a reasonable basis for classifying Rankin as an executive, other than defendant's conclusion that he was."

Plaintiff should have been awarded liquidated damages in light of this failure of proof by the employer.

## V.

We hold that the trial judge properly determined that plaintiff was not exempt from the overtime pay requirements of the FLSA. In addi-

tion, the trial judge correctly computed the amount of unpaid compensation due to the plaintiff. We do find, however, that the trial judge should have made an award of liquidated damages equal to the unpaid overtime.

We therefore reverse the trial court and order entry of judgment for plaintiff in the amount of $5,243.31 plus $5,243.31 in liquidated damages. Costs of this appeal to plaintiff.