## WALLING v. RICHMOND SCREW ANCHOR CO., Inc.

Civ. No. 3364.

District Court, E. D. New York.

Feb. 13, 1945.

See, also, 4 F.R.D. 265.

Douglas B. Maggs, Solicitor, and Archibald Cox, Associate Solicitor, both of Washington, D. C., and Irving Rozen, Regional Attorney, and Robert A. Levitt, Attorney, both of New York City (Irving Rozen and Robert A. Levitt, both of New York City, of counsel), for plaintiff.

E. John Ernst, Jr., of New York City (Denis M. Hurley, of Brooklyn, N. Y., of counsel), for defendant.

KENNEDY, District Judge.

This is an action to enjoin the defendant from violating the provisions of section 15 (a) (1) and 15 (a) (2) of the Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. Both sides move for summary judgment.

The defendant is engaged in the production of building construction material. It has approximately 65 employees engaged in production. Its goods are produced for interstate commerce.

The claim of the complaint is that defendant has violated section 7 and section 15 (a) (1), (2) of the Fair Labor Standards Act because it has failed to compensate its employees at the rate of not less than one and one-half times their regular rate of pay for work in excess of 40 hours a week. There is no question that the act applies, and all of the material facts are admitted.

In one of its departments (the snap-ty department) the defendant uses an incentive bonus plan. This phase of the litigation will be mentioned later. But the controversy principally arises from a bonus plan generally employed by the defendant.

Since 1933 the defendant has made bonus payments to its employees generally. The first annual bonus payment was made at the end of 1936. It amounted to 10% of the yearly base pay. On April 3, 1942, at a special meeting of the defendant's board of directors, it was unanimously agreed that all employees of the firm should be given a monthly bonus in the form of war stamps, the amount of the bonus to be, in the case of each employee, 10% of his weekly base salary for the previous month, commencing in June 1942. A slight modification in the form of payment was made in October 1942. On that date instead of giving war stamps to the employees, the defendant deposited the earned bonus in individual savings accounts in the East New York Savings Bank in Brooklyn. It transmitted to the bank a check, together with a list showing how the bonuses should be credited individually. As soon as any particular account made it possible, war bonds were given to the recipient of the bonus. During the time when the deposits were insufficient to purchase bonds, employees could make deposits or withdrawals in these accounts, at will.

A further modification was made in September 1943 under which deposits were no longer made in individual accounts of employees but in a joint account carried in the name of two of the defendant's officers. When this joint account showed a sufficient credit to any individual to permit the purchase of a war bond, the bond was purchased and delivered to that individual.

The decision of these motions necessarily turns on the question whether the bonus credits and payments are to be considered part of the regular rate of pay. Under the system employed by the defendant, overtime is paid upon the base weekly rate, shorn of the bonus. The payroll record of one of the defendant's employees will serve to illustrate the procedure.

During the week ending October 6, 1943, this particular employee worked 40 regular hours and was paid $32. He worked 23 hours overtime and was paid $27.60. During the week ending October 13, 1943, he worked 32 regular hours and was paid $32. He worked 19 hours overtime and for this was paid $22.80. During the week ending October 20, 1943, he worked 24 regular hours and was paid $32. He worked 15½ hours overtime, for which he received $18.60. During the week ending October 27, 1943, he worked 38 regular hours and

was paid $32. He worked 19 hours overtime and for this was paid $22.80. His so-called regular pay in these four weeks amounted to $128. On the books of the defendant he received for these four weeks an additional credit of $12.80, being 10% of $128. But the overtime pay rate was arrived at by dividing his "regular" weekly earnings, $32, by forty.

It is the claim of the plaintiff that the 10% bonus should be included in, and form part of, the actual regular rate for the purposes of overtime payment. It is the claim of the defendant that the 10% bonus is a gift or gratuity, which it is not bound by contract to pay, and therefore this forms no part of the regular rate, which so far as any contract is concerned has been established as the "regular" weekly earnings, not including the bonus.

At the outset it is possible, I think, to dispose of the defendant's contentions (1) that the bonus is a mere gift or gratuity, and (2) that there is no binding obligation on the part of the defendant to pay this bonus. It seems to me that both of these contentions are answered by the plain fact that the bonus was part of the employees' actual and regular compensation.

For some two and one-half years these employees have received these amounts, or been credited with them, regardless of how much or little they produced. In a letter to the Wage and Hour Division of the United States Department of Labor, dated May 14, 1943, the defendant acknowledged that the bonus payments would cease only when the company's finances indicated "an unhealthy condition". Moreover, it stated that every employee became entitled to the bonus payment after he had been in service for three months.

The resolution of the Board of Directors probably does not rise to the dignity of a contract. Moreover, it is possible that in some types of litigation where legal technicalities must be observed in all their strictness, the bonus payments could properly be called gifts or gratuities. But I do not believe that such an approach to the problem is permissible under the act. Of course, the object of the statute was to spread employment, and one of the means which Congress thought might bring about this end was to make it costly for employers to compel employees to work overtime. At least this is my understanding of the analysis of the purposes of the act which Mr. Justice Reed makes in Overnight Motor Co. v.

Missel, 316 U.S. 572, 577, 62 S.Ct. 1216, 86 L.Ed. 1682. If I am right in this, then the purpose of the act could be defeated by any employer who (1) could compensate his employees regularly at some rate satisfactory to them (in this case the "regular salary" plus bonus), and (2) at the same time, make overtime cheaper for himself by basing it upon a weekly pay smaller than what the employee is actually and regularly receiving (in this case the "regular" salary, without the bonus). At least, this is certainly the end result of the system employed by the defendant. The employees are actually and regularly receiving 10% more than what is called the "regular rate" which is used as a basis for overtime. And if such a system can be held permissible and lawful because the additional weekly compensation has some of the legal incidents of a gift, rather than those of a payment under a contract, then the purposes of the act can always be defeated in a very simple way.

■ I think the sensible test of what is regular compensation is not to be discovered by analysis of the strict legal relationship between the employer and the employee concerning any elements of compensation actually and regularly paid. I think that regardless of what that legal relationship may be, the test is whether the compensation regularly and actually reaches the employee, no matter how indirect the process may be, independently of whether under some other circumstances it could be called a gratuity, and independently of the possibility that at some time this compensation may shrink for one reason or another.

It seems to me that the defendant's main contention here is based upon the decision of the Supreme Court in Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, and possibly on the recent case of Walling v. Harnischfeger Corporation, 7 Cir., 145 F.2d 589. The defendant says that the rationale of these cases is that if the employees and the employer conduct a bona fide negotiation and arrived at a "regular" rate, then that rate, and no other, should be the basis for overtime pay. To support its argument, defendant furnishes in the motion papers a set of affidavits from the employees. These affidavits certainly indicate on their face that the employees "do not now regard this bonus" as a part of salary, and that the defendant has the right to give it or with-

hold it at will. And so, the question to be decided is whether, in a case where the employee's overtime is based upon a weekly wage lower than that which he has regularly and for a long period received, the Fair Labor Standards Act is rendered inoperative because there has been an accord between the employer and his employees on a different "regular" rate.

■ This query can be stated more broadly and in slightly different language. May the employee contract away his rights under the Fair Labor Standards Act?

Obviously the answer to the question would be in the negative, if it is put thus broadly. For the whole problem is affected by a public interest, an interest which private contracts between employer and employee ought not be permitted to affect injuriously, or at least, in a manner directly contrary to the purposes of the legislation.

Does Walling v. Belo Corporation, supra, hold to the contrary, and establish that by contract an employer may pay overtime wages based upon a weekly wage less than that which the employee regularly and actually receives? I do not believe that the Belo case stands, or could stand, for any such sweeping proposition. I acknowledge that the case offers difficulty, but I attribute this to the fact that the Belo case involved a pay arrangement both unique and difficult to analyze.

■ I prefer rather to look for guidance to Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 65 S.Ct. 11. In that case, by the use of the so-called "Poxon" or split-day plan, the employer brought about a situation under which overtime was paid on the basis of a regular rate agreed upon between the parties, but not upon the regular rate actually received, or upon the hours actually and regularly spent each week. I do not say the facts in the Helmerich case are precisely similar to those at bar. But the Helmerich case is certainly authority for the proposition that the right to fix a regular rate by contract does not permit the setting up of an artificial rate—that employer and employee may not legally agree upon a basis for overtime compensation which is different from the actual basis for regular compensation. If this is the holding in the Helmerich case, and I think it is, then defendant's contention concerning the effect of the agreement here is certainly untenable, and the Helmerich case rules

this one, not only in dictum but in decision. Indeed, in the Helmerich case, after disposing of a contention almost identical with that advanced by the defendant here, the court mentions the Belo case and says it is not authority to the contrary.

Turning now to the incentive bonus which is employed by the defendant in its snap-ty department, I hold that this incentive pay, like the general bonus, is clearly part of the regular rate of compensation of the defendant's employees, and that the hourly overtime rate in that department must also be one and one-half times the amount arrived at by dividing by forty the "regular" compensation plus the incentive pay for the period.

I do not for one moment believe that the defendant intended, by its bonus system, to circumvent the Fair Labor Standards Act. I hold merely that overtime must be paid on the basis of the regular compensation actually received by the employee, regardless of what the components of that actual compensation are called, and no matter how desirable and beneficial, or even praiseworthy it may be, to divide the regular and actual compensation into components, artificial for purpose of the statute, though perhaps real enough for other purposes.

The plaintiff's motion for summary judgment is granted; the defendant's motion is denied.