Johnny L. VOYLES, Plaintiff,

v.

W. R. (Buddy) MURRAY d/b/a D & D
Wrecker Service, Defendant.

Civ. A. No. CA-5-504.

United States District Court
N. D. Texas,
Lubbock Division.

April 9, 1969.

Lewis P. Terrell, Lubbock, Tex., for plaintiff.

William J. Gillespie, Gillespie & McClendon, Lubbock, Tex., for defendant.

### MEMORANDUM OPINION

WOODWARD, District Judge.

Plaintiff in this case claims that he was the employee of defendant and that his employer was subject to the Fair Labor Standards Act and that for the weeks during which the plaintiff worked more than 40 hours he was entitled to additional compensation under Sections 206 and 207 of said Act, Title 29, U.S.C. § 201 et seq.

This Court has entered its Findings of Fact and Conclusions of Law, but briefly, the facts are as follows:

Defendant was the sole proprietor of an enterprise located in Lubbock, Texas, which had as its principal activity the furnishing of a towing or wrecker service for the owners of wrecked or disabled vehicles and the storage of said vehicles. The majority of the requests for the defendant's services came from the owner, or representatives of the owner, of said vehicles, and the defendant would tow the vehicle from the highway, streets, or even from the private premises to a garage or mechanic as designated by the owner. If no designation was made, the defendant would tow the vehicle to his own storage lot and would charge a storage fee of 75 cents per day until the vehicle was reclaimed by the owner.

The defendant also had an arrangement with the City of Lubbock and the Texas Department of Public Safety

whereby these agencies would call defendant or other wrecker services to tow the wrecked vehicles or disabled vehicles off of the streets and highways. This was done on a rotating service of once every three weeks, and the wrecker service of defendant would be called by these agencies only if the owner of the vehicle could not or did not designate his own preference as to which wrecker service would be called. Apparently over 75% of the calls for the towing service were made by the individual owner.

In some cases the defendant would purchase a wrecked automobile, or when the owner did not pay the fees, the title could be forfeited to defendant. He would then salvage the salable parts and junk the remainder as scrap. The defendant's salvage and scrap activities constituted a minute portion of his business and would amount to only ten or twelve cars a year. The proceeds from the sale of the scrap was less than $300.00 for the period of time involved in this suit. It further appears from testimony that a substantial part of the scrap was even given away and that the principal purpose of the gift or the sale of the scrap was to clear the lot and make room for additional cars. It was necessary that the scrap be removed in order to carry on the main business activities of defendant which was towing and storing vehicles.

The receipts by the business for all of its sales and services were less than $250,000.00 a year, and practically 100% of such receipts were for sales and services rendered and made in the State of Texas.

The defendant claimed that plaintiff had no cause of action because:

(1) The plaintiff was a partner in said business and not an employee as defined by Section 203 of the Act, and

(2) The business of defendant was exempt by the provisions of Section 213(a) (2) of the Act.

■■  As to the claim of partnership, defendant's position is not sound. The only inference that can be drawn from the evidence was that plaintiff and defendant would become partners after all of the indebtedness of the business had been paid, and this had not been accomplished when they severed relations in March of 1968. Although plaintiff and defendant at times referred to themselves as partners, the defendant retained full control over the business and never granted or conveyed an interest in the business to the plaintiff. The parties did not have an agreement concerning the sharing of losses, but agreed that profits would be shared in the future, i. e., when the debts had been paid. Plaintiff was subject to the orders or control of the defendant, and although he was the general manager of the business, the nature of his duties and the acts of the parties show an employer-employee relationship. No accounting was ever made, one to the other, and defendant in March of 1968 made the decision to terminate this employment and such termination was accepted by plaintiff. The mere agreement that the parties will enter into a partnership in the future, or upon the happening of an event in the future, does not create a legal partnership in the present. 68 C.J.S. Partnership § 11, p. 418; 44 Tex.Jur.2d Partnership § 22, p. 345; Willis v. Harvey, 349 S.W.2d 323 (Tex.Civ.App.—Houston, 1961, writ ref'd n. r. e.); Cearley v. Cearley, 331 S.W.2d 510 (Tex.Civ.App.—Dallas, 1960, no writ); Underberg v. Yates, 194 S.W.2d 277 (Tex.Civ.App.—Amarillo, 1946, no writ).

The evidence is uncontradicted that more than 50% of defendant's annual volume of sales was done in the State of Texas, and that the amount of such annual volume of sales was less than $250,000.00, and that the nature of said business and the volume of said business was not such that would place defendant's business in the category of an enterprise as defined in 29 U.S.C. § 203(s). In order to be exempt under the provisions of 29 U.S.C. § 213(a) (2), defendant was required to establish, which he did, not only the above facts to prove

his exemption, but also must show that he was a retail or service establishment 75% of whose annual dollar volume of sales of goods or service, or of both, was not for resale and was recognized as a retail sale or service in his particular industry.

It is undisputed that more than 75% of the receipts of said business were from the towing and storage charges, and less than 25%, in fact far less, came from the sale of scrap. Therefore, the real question in this case is whether or not the defendant's business falls within the exemption provided in Section 213(a) (2) of the Act, and this depends upon whether or not its business can be characterized as a "retail or service establishment" within the meaning of Section 213(a) (2).

The defendant's primary activity, the towing and hauling of wrecked or disabled automobiles, is essentially in the nature of a service as opposed to the sale of goods, and under the express wording of Section 213(a) (2) it would appear that the defendant's business would be exempt.

However, Section 213(a) (2) has been interpreted so as to require a service establishment to be of a *retail* character if it is to be exempt, even though it meets all other requirements of this section of the Act. Roland Elec. Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383. In this case, the defendant's business activities (in towing and hauling wrecked or disabled automobiles) partake of a retail character. The ultimate purchasers or users of the defendant's service were the individual automobile owners. And, although under the testimony it appears that a substantial portion of the defendant's hauling activities were initiated by calls from the City of Lubbock or from the State Department of Public Safety officials, some of these calls were made at the request of the owner, and the individual automobile owners were ultimately the persons who paid for the towing and storage charges, or who alternatively suffered forfeiture of title to the car to the defendant to cover those unpaid towing and storage charges. The benefit of the defendant's towing services was afforded to individual customers as opposed to *commercial or industrial* concerns, and therefore are retail in character.

 For these reasons, this Court concludes that the defendant's business was a "retail or service establishment" within the terms of Section 213(a) (2) and was, therefore, entitled to the exemption.

Accordingly, judgment will be entered for defendant.