Peter J. **BRENNAN**

v.

**SOUTHWIRE COMPANY.**

Civ. A. No. 1063.

United States District Court,
N. D. Georgia,
Newnan Division.

May 24, 1974.

Beverly R. Worrell, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Swift, Currie, McGhee & Hiers, Atlanta, Ga., for defendant.

## ORDER

HENDERSON, District Judge.

This is an action originally brought by the Secretary of Labor (hereinafter referred to as the "Secretary") for overtime pay and injunctive relief pursuant to Section 17 of the Fair Labor Standards Act of 1938, as amended, (hereinafter referred to as the "Act"), 29 U.S. C. § 201 et seq. At issue is the alleged failure of the defendant to pay overtime compensation to the parts supply room stock clerks in the company's fleet department. By stipulation prior to trial the parties agreed on the amount of overtime pay due these employees, which sum was paid to the plaintiff for distribution to the persons entitled thereto. The only question remaining is whether an injunction should issue restraining the defendant from future violations of Section 15(a)(2) overtime provision of the Act, 29 U.S.C. § 215(a)(2).

The case came on for trial before the court without a jury and, at the conclusion thereof, the parties were directed to submit written arguments and briefs. They have complied with that directive and the case is now ready for decision.

The defendant is a Georgia corporation with a place of business in Carrollton, Georgia for the production, sale and distribution of electrical wire, cable and other products. As a part of its operation, the defendant uses trucks and tractor-trailers for the transportation of goods in intrastate and interstate commerce. This unit is referred to in company parlance as the "fleet department" composed of over-the-road truck drivers, forklift operators, mechanics and parts supply stock clerks. The fleet department is housed in a separate building constructed in 1966.

During 1966, the Secretary conducted an investigation of the defendant and found that it was in violation of the Act in failing to pay overtime rates to the fleet stock clerks and forklift mechanics.

The company agreed with the conclusions of the investigator that the fleet stock room clerks were entitled to overtime pay but challenged the right of the forklift mechanics to such compensation because they allegedly worked on the over-the-road vehicles and thus, were subject to the "motor carriers" exemption of the Act. 29 U.S.C. § 213(b)(1). Thereupon, the Secretary filed suit against Southwire Company for overtime back pay for both the stock room clerks and the forklift mechanics. *Wirtz v. Southwire,* C.A. No. 822 (N.D. Ga.1967). A settlement stipulation was subsequently filed and the case dismissed. It included back overtime wages for the fleet stock room clerks along with the forklift mechanics. As a part of the stipulation, the defendant agreed to pay overtime compensation in the future as required by the Act.

Because of the 1966 investigation, the defendant decided to move the fleet stock room to the main mill supply area and to begin paying its employees overtime rates. Construction was commenced on the facility but before it was completed, two of the officers of the defendant were told by an agent of the Department of Labor that the fleet stock clerks could be exempted from the overtime provisions of the Act if they were given certain additional tasks, including making periodic trips in company trucks to and from the Atlanta airport and the Carrollton bus station to pick up parts ordered and shipped to the defendant from points outside the state. Based on this representation, the defendant cancelled its plans to move the fleet stock room and assigned the duties suggested by the agent to the fleet stock clerks. Upon taking this recommended action, the defendant then considered these employees to be exempt and ceased paying them overtime rates.

Over the later years the company enjoyed a substantial growth in business, and a corresponding increase in employees. The personnel of the fleet

stock room rose from one clerk to six. As the primary duties of maintaining and issuing parts grew, their other assignments decreased. During this period of time, the fleet stock clerks made fewer trips to pick up parts and supplies so that gradually this function was assumed by other employees in the fleet department. They continued to perform the other duties previously suggested by the investigator for the Department of Labor.

In May of 1972 the Secretary conducted another inspection of the defendant company in which he determined that it was not entitled to exempt the fleet stock room clerks from overtime pay and, hence, was not in compliance with the Act. This suit was then filed for back pay and to enjoin future violations.

As stated, the sole concern in this case is that of injunctive relief. All other differences have been resolved by agreement.

■ The decision of whether an injunction should issue in restraint of future violations rests in the discretion of the court. *Goldberg v. Cockrell*, 303 F. 2d 811, 813 (5th Cir. 1962). Some of the factors to be considered in guiding the court in its exercise of that discretion are

. . . the approach and attitude of the parties reflecting the circumstances giving rise to the controversy, the employer's previous actions of non-compliance or litigation, the moral and business responsibility of the employer, the extent of which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contrition under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance . . . .

*Mitchell v. Hodges Contracting Company*, 238 F.2d 380, 381 (5th Cir. 1956).

■ The thrust of the plaintiff's argument here seems to be the prior violation uncovered in 1966 involving the overtime pay of this same group of employees and the forklift mechanics. If such an infraction alone mandates equitable restraint, then there is no question but that an injunction should issue. However, as pointed out in *Mitchell v. Hodges, supra*, there are other standards to be observed before invoking injunctive hardship. Admittedly, Southwire earlier violated the terms of the Act. On that occasion, when the error was called to its attention, the defendant immediately agreed to adjust the pay of the aggrieved employees to reflect the correct amount of overtime compensation. Because it disagreed with the investigator's findings on the status of the forklift mechanics, an action was instituted. When that dispute was settled an agreement was made for payment of back wages, which necessarily included those of the fleet stock room clerks. It is significant that the primary reason for filing the 1967 complaint was to secure relief for the mechanics and not the clerks. Since the defendant had conceded that the clerks were entitled to overtime pay, this inclusion in the stipulation agreement was hardly more than a formality.

The more important consideration is the probability or improbability of further violations. Certainly, no meaningful purpose will be served in enjoining future violations of the Act if the evidence demonstrates a probability of compliance. Southwire employs over 3,100 people in seven plants. It is the largest employer in the Carrollton area and its employees have the benefit of an excellent wage scale. It seems inconceivable that it would invite court action merely to avoid the payment of a relatively small sum in overtime wages. Indeed,

this failure stems from honest error rather than willful conduct.

Taking these circumstances into consideration, a more crucial factor, then, is whether these oversights will occur again. As stated in *Mitchell v. Hodges, supra,* what "effectual corrective procedures" have been instituted by the employer to insure future compliance with the Act? Again, the evidence points to a positive attitude of cooperation by the defendant. Since the filing of this suit, Southwire employed a new director of industrial relations with extensive training and experience in the field of labor matters. Not only did he recommend an immediate settlement of the back wages, but also instituted new rules and procedures to prevent a repetition of these violations. Under his direction, a committee of company officials was organized for the sole purpose of monitoring and investigating the defendant's wage and job classification problems as they relate to its legal obligations. This committee has the specific authority to take corrective steps to assure conformance with the law. This positive approach cannot be interpreted as just a pretense to avoid the pressure of present litigation.

It is not the intent of the court to punish for past mistakes but to insure that these wrongs will be eliminated in the future. To that end, the court is reluctant to impose the serious consequences of an injunction at this time. However, this forbearance should not be viewed as a license for the defendant and others to hereafter relax their vigilance. To the contrary, the defendant is expected to adhere strictly to the spirit of its promises of compliance without the continued surveillance of the judiciary.

There being no willful violation of the Act shown by the evidence or any indication of future violation, the plaintiff's prayer for a permanent injunction is denied.

Each party shall bear its own costs.

Let judgment issue accordingly.