Ray MARSHALL, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

R & M ERECTORS, INC., and Robert R.
Hastings, Sr., Individually and as an Officer of the Corporate Defendant, Defendants.

Civ. A. No. 74–57.

United States District Court,
D. Delaware.

March 11, 1977.

W. Laird Stabler, Jr., U. S. Atty., Wilmington, Del., William J. Kilberg, Sol. of Labor, and Robert B. Lagather, Deputy Sol. of Labor, Washington, D. C., Marshall H. Harris, Regional Sol., and Richard D. Soltan, Atty., U. S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Roy S. Shiels of Brown, Shiels & Barros, Dover, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

The Secretary of Labor[1] (the "Secretary") has brought this action against R & M Erectors, Inc. ("R & M") and Robert R. Hastings, Sr. ("Hastings"), former president and co-owner with his former wife of R & M,[2] (collectively, the "defendants") pursuant to the Fair Labor Standards Act of 1938, as amended, ("FLSA") 29 U.S.C. § 201 et seq., to recover, unpaid overtime wages owed by defendants to several former employees and to enjoin the defendants from violating the FLSA's overtime provi-

---

1. Ray Marshall, the recently appointed Secretary of Labor, has been substituted automatically as the party-plaintiff by virtue of Rule 25(d)(1), F.R.Civ.P.

2. Trial Transcript (Docket Item 16A) 356, 376 (hereinafter cited "T._____"). Because the corporate charter of R & M was voided on March 1, 1975 (Docket Item 14, Part III, No. 8) and because his ex-wife was not named as a

sions and record-keeping requirements.[3] The case was tried to the Court, without a jury, on October 18, and 19, 1976,[4] and this memorandum opinion constitutes the findings of fact and conclusions of law required by Rule 52(a), F.R.Civ.P.

## I. *Background*

From October 1972[5] until December 1973,[6] the defendants, based in Bridgeville, Delaware,[7] erected and finished off modular units which had been pre-fabricated in North Carolina[8] for public schools in Maryland.[9] During the course of these activities, the defendants employed numerous laborers, and it is on behalf of these employees that the Secretary maintains this action.[10]

■ Overtime compensation is guaranteed to certain employees by section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), which provides:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate

not less than one and one-half times the regular rate at which he is employed."[11]

The phrase "enterprise engaged in commerce or in the production of goods for commerce" is defined in part as:

" . . . an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which—

\* \* \* \* \* \*

(3) is engaged in the business of construction or reconstruction, or both . . . ."[12]

The transfer of the pre-fabricated units (which the defendants' employees erected) from North Carolina to Maryland, for example, establishes that materials handled by defendants' employees "moved in commerce." Also, the defendants "engaged in the business of construction or reconstruction".[13] Thus, the Court finds, and the defendants do not dispute,[14] that defendants' enterprise was subject to the FLSA's overtime pay provisions.

## II. *Record-keeping*

■■ To enable the Secretary to carry out the mandate of the FLSA, Congress

---

defendant, Hastings is, for practical purposes, the only defendant.

3. Jurisdiction is conferred upon this court by section 17 of the FLSA, 29 U.S.C. § 217, which enables district courts to remedy violations of section 15(a)(2) & (5) of the FLSA, 29 U.S.C. § 215(a)(2) & (5), which in turn makes unlawful the failure to comply with the overtime (section 7 of the FLSA, 29 U.S.C. § 207) and the record-keeping (section 11(c) of the FLSA, 29 U.S.C. § 211(c)) provisions of the FLSA. *Brennan v. Valley Towing Co.*, 515 F.2d 100, 102 (C.A. 9, 1975); *Brennan v. Jaffey*, 380 F.Supp. 373 (D.Del.1974).

4. The case was not submitted to the Court for decision until completion of the post-trial briefing on January 27, 1977.

5. T. 357.

6. T. 360.

7. T. 5.

8. T. 12.

9. Docket Item 14, Ex. A.

10. Section 16(c) of the FLSA, 29 U.S.C. § 216(c).

11. After the events which led to this litigation occurred, the FLSA was amended in 1974 by Pub.L. 93–259. Accordingly, references to the FLSA do not reflect the 1974 amendments.

12. Section 3(s) of the FLSA, 29 U.S.C. § 203(s). The parties stipulated that the business activities of the defendants constituted an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r). (Docket Item 14, Part III, No. 3).

13. Docket Item 14, Part III, No. 7.

14. Docket Item 19, pp. 16–17.

empowered him to require employers, covered by the FLSA, to maintain certain employment records. As authorized by section 11(c), 29 U.S.C. § 211(c),[15] the Secretary promulgated regulations[16] which specify the information which certain employers must record for each employee. The Court finds that defendants failed to maintain adequate records, as required by the Secretary, containing the following data on their employees: hours worked on a daily or weekly basis, day and time of day when workweek began, and overtime payments.[17] Accordingly, the Court holds that defendants violated section 11(c) by failing to prepare and preserve appropriate employee records.

### III. *Overtime*

 The Secretary has petitioned the Court to enjoin the defendants from withholding overtime compensation due defendants' former employees under section 7(a).[18] Initially, the Secretary must prove that defendants violated section 7(a) by allowing their employees to work in excess of forty hours per week without payment of overtime. Then, to establish the liability of defendants for back wages resulting from any failure to pay overtime, the Secretary must identify the employee, the number of hours of overtime worked during a week, the number of weeks which the employee worked for defendants, and the employee's regular salary rate.

██ The failure of defendants to satisfy the record-keeping requirements of section 11(c) has made resolution of these issues significantly more difficult. Defendants' breach, however, does not inevitably bar recovery by employees who understandably did not document contemporaneously the history of their employment with defendants.[19]

"When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that *an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent*

---

**15.** Section 11(c) of the FLSA, 29 U.S.C. § 211(c), provides:

 "Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."

Since the defendants were subject to the overtime requirements of the FLSA, they were also subject to its record-keeping requirements. *Brennan v. Valley Towing Co., supra* 515 F.2d at 111.

**16.** 29 C.F.R. Part 516. The particularized standards of 29 C.F.R. § 516.2 were applicable to the defendants because they were subject to both the overtime and the minimum wage provisions of the FLSA.

**17.** T. 261, 381–82; PX 7; DX 4. Furthermore, the limited records maintained by defendants did not span the full period of their operation. T. 259–60.

**18.** While the discretion of the Court to deny restitution is limited, the Court need not always award back overtime wages to employees statutorily entitled to them. *Brennan v. Saghatelian*, 514 F.2d 619 (C.A. 9, 1975), *reh. denied sub nom Dunlop v. Saghatelian*, 520 F.2d 788 (C.A. 9, 1975).

**19.** T. 61, 163.

*of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.* If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. . . .

"The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act. . . . [W]e are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute."

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192–1193, 90 L.Ed. 1515 (1946) (emphasis added).

■ The testimony of several employees can often be used to prove a uniform pattern or practice of their working time. *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 829 (C.A. 5, 1973). Specifically, when employees leave a central location together at the beginning of a work day, work together during the day, and report back to the central location at the end of the day, the relatively consistent testimony of several employees can set forth a prima facie case that all employees in the same job classification worked the same number of hours. The burden then shifts to the employer to rebut the prima facie case.

■ From the testimony of former R & M employees, the following work day pattern emerged. On the typical day, the employees reported to the Bridgeville office at 6:00 A. M.[20] Sometimes small tools or supplies were loaded into defendants' vehicles, and perhaps the vehicles were serviced; the employees then learned from Hastings where the day's work would be performed.[21] Because the job sites were scattered throughout Maryland, an automobile trip averaging 1.5 hours was necessary before the work could begin.[22] Once at the job site, the employees worked a daily average of nine hours.[23] Finally, the return trip to Bridgeville consumed another 1.5 hours.[24] Thus, the Court finds, on the basis of pattern and practice evidence, that the average work day of defendants' employees, measured from the 6:00 A. M. starting time until the return to Bridgeville in the evening, lasted twelve hours.[25] The standard five day week followed by defendants, accordingly, totaled sixty hours.[26]

■ Because employees, who are protected by the FLSA, are entitled to overtime compensation for time worked weekly in excess of forty hours, defendants' employees should have been paid at one-and-one-half times their regular hourly rate or its equivalent for the twenty overtime hours that they worked each week. The defendants' employees were paid a flat salary for a week's work[27] since the defendants did not pay overtime.[28] No adjustment was

20. T. 5, 49, 52, 57, 80, 112, 152, 183, 230, 245, 337–38.

21. T. 6–7, 9, 52, 81, 113, 184.

22. T. 11, 52, 153. Occasionally, some employees would join the R & M crew at a convenient location along the route. The Court does not view the infrequent savings of perhaps twenty to thirty minutes as affecting the accuracy of the employees' estimates of the length of the work day. T. 26–27, 39, 276.

23. T. 13, 84, 116, 154. Testimony on the duration of lunch breaks was inconsistent. The estimates ranged from no period of rest to a sustained work stoppage of more than thirty minutes. T. 14, 32, 131, 154, 171, 206–07, 311, 371. Given the absence of detailed time records, the Court is satisfied that a working period of nine hours represents a reasonable and acceptable estimate.

24. T. 15, 85.

25. T. 15.

26. T. 16, 56, 86, 103, 117–18, 157, 191, 235, 329, 349.

27. T. 198–99, 246, 316.

28. T. 389.

**778**

made in an employee's weekly wage to reflect any fluctuation in the hours worked during the week.[29] Therefore, the Court finds that defendants violated section 7(a) of the FLSA.

Next the Court must determine the amount of overtime compensation wrongfully withheld. The Secretary after reviewing the records of defendants and conducting interviews has determined the term of employment and salary of twenty-three employees and has calculated the overtime owed to them.[30] The hourly regular rate upon which the overtime figures are based was computed by dividing each employee's weekly salary by the weekly average of sixty hours. *Overnight Motor Co. v. Missel*, 316 U.S. 572, 580 n.16, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942); *Mumbower v. Callicott*, 526 F.2d 1183, 1187 (C.A. 8, 1975). Then, the overtime due each week was found by multiplying the hourly rate by one-half of the twenty hours of overtime.[31] Multiplication of the weekly overtime due by the number of weeks of overtime worked[32] yielded the total owed to the employee.

The Secretary's findings have been corroborated substantially[33] by the trial testimony of eleven former employees.[34] The defendants concede that the Secretary has made out a prima facie case with respect to the eleven employees who testified,[35] but they argue that the Secretary failed to carry his burden for the twelve identified employees who did not appear at trial. The hours worked by these employees have been established by virtue of the pattern and practice evidence. The Secretary's inspection of records and interviews confirmed their salaries and terms of employment. The proof, of course, is not as powerful as might normally be expected, but it is sufficient to raise a "just and reasonable inference," *Anderson v. Mt. Clemens Pottery Co., supra*, that the twelve employees were denied overtime in the amounts estimated by the Secretary.[36] *See Brennan v. Parnham*, 366 F.Supp. 1014, 1026 (W.D.Pa.1973).

The defendants have not rebutted the Secretary's prima facie case, and, therefore, the Court will direct payment of wrongfully withheld overtime by defendants to the Secretary on behalf of the twenty-three employees according to the following schedule:[37]

---

**29.** T. 17, 122, 157, 378. *Sometimes the employees worked a sixth day without receiving overtime* (T. 18, 370–71), *but the Secretary has not sought compensation for work performed beyond the five day week.*

**30.** PX 3; PX 4; T. 259, 262, 267–73.

**31.** A coefficient table simplified the arithmetic. PX 5; T. 272.

**32.** The Secretary's conservative estimate of the number of weeks took into account weeks *where no overtime was worked* because, for example, the employees stayed in motels near job sites which were too distant for daily travel. T. 39, 127, 234, 274, 279–281, 366–67.

**33.** T. 151, 182, 229, 336.

**34.** The number of weeks of overtime estimated by the employees who testified exceeded in some instances the results of the Secretary's investigation. T. 48, 168, 266. Because the Secretary made his findings in February, 1974, soon after R & M ceased operations and in part from payroll records and because *the employees did not dispute directly the Secretary's* data, the Court concludes that the Secretary's tabulation is more reliable. *Brennan v. Carl Roessler, Incorporated*, 361 F.Supp. 229, 234 (D.Conn.1973).

**35.** T. 299.

**36.** Moreover, the defendants agreed that PX 3 and PX 4 containing the results of the Secretary's study, could be "offered into evidence without objection for the limited purpose of showing the computation of back wages as made by [the Secretary]." Docket Item 14, Part VI.

**37.** Interest at the legal rate from the median date of each employee's service with R & M until satisfaction of the claims must also be forthcoming. *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 183 (C.A. 8, 1975); *Brennan v. Parnham, supra*; *Brennan v. Carl Roessler, Incorporated, supra*.

The Secretary has not sought liquidated damages for the defendants' *failure to pay appropriate overtime.*

| Name | Dates of Employment | | Overtime Due |
|------|------|------|------|
| G. N. Adams | 7/11/73 | 11/21/73 | $ 352.80 |
| R. Blades | 7/4/73 | 9/12/73 | 250.50 |
| K. Cook | 5/9/73 | 7/25/73 | 293.92 |
| J. Custer, III | 6/6/73 | 8/15/73 | 250.50 |
| K. Custer | 6/6/73 | 8/22/73 | 238.95 |
| L. R. Davis | 8/29/73 | 9/5/73 | 46.76 |
| J. DeFord | 1/10/73 | 11/21/73 | 1,503.00 |
| W. L. DeFord | 8/15/73 | 11/21/73 | 397.46 |
| A. Handley, III | 10/11/72 | 11/15/72 | 100.20 |
| J. W. Hunter | 8/15/73 | 11/21/73 | 397.46 |
| L. Lippert | 8/22/73 | 11/21/73 | 300.60 |
| F. B. Maloney | 11/22/72 | 6/27/73 | 367.40 |
| M. J. McGreir | 8/1/73 | 8/22/73 | 112.88 |
| M. S. Melson | 8/1/73 | 10/17/73 | 248.05 |
| R. Melson | 6/20/73 | 10/3/73 | 300.60 |
| D. Moore | 11/29/72 | 1/31/73 | 133.60 |
| G. D. Moore | 12/7/72 | 12/5/73 | 1,115.10 |
| L. J. Moore | 11/29/72 | 6/26/73 | 551.10 |
| L. Murphy | 2/7/73 | 10/10/73 | 935.20 |
| D. Seabrease | 9/5/73 | 9/12/73 | 42.76 |
| G. F. Sennett | 10/11/72 | 8/22/73 | 1,061.49 |
| C. Smith | 8/15/73 | 10/3/73 | 150.30 |
| J. C. Street, Jr. | 12/6/72 | 6/26/73 | 551.10 |
| | | | $9,701.73 |

The Secretary has also sought compensation for eleven "unidentified" employees.[38] The Secretary arrived at an overtime amount for these employees apparently by taking the average overtime payment owed to the employees in whose behalf he made individual calculations.[39] At trial, however, the Secretary made no

38. The Secretary suggests (Docket Item 20, p. 10) that the eleven former employees listed in the pre-trial order (Docket Item 14, Part III, No. 4) who are not within the group for whom the Secretary made individual computations are the "unidentified" employees, but DX 4 indicates that there were other employees who are not listed in the pre-trial order.

39. PX 4.

effort to support the reliability of this method of approximation. While the Secretary's burden of proof under these circumstances is relatively light, he may not recover on the basis of nothing more than pure speculation. The identity of these employees is far from clear, but, more important, the Court cannot ascertain justly or reasonably the length of employment or the weekly salaries of these employees. Accordingly, without a plausible factual basis for the Secretary's speculation, the Court will not award back wages to the Secretary for the benefit of employees on whose behalf no evidence was presented at trial.[40]

## IV. *Defenses*

The defendants have tendered several arguments which, if accepted by the Court, would eliminate or reduce their liability for unpaid overtime.

■■■■ First, the defendants maintain that the salaries paid to the employees included the necessary overtime payment for travel time. They argue that the minimum wage was paid for on-site work and that travel time was appropriately treated as overtime. Assuming that the employees worked forty hours on-site and traveled for twenty hours, the defendants contend that no back wages are owed because the sum of forty hours compensated at the minimum wage and twenty hours of overtime based on the minimum wage would have been less than the salaries actually paid to the employees. However, a fixed salary will not be deemed to include an overtime component in the absence of an express agreement to that effect. *Warren-Bradshaw Drilling Co. v. Hall*, 317 U.S. 88, 93, 63 S.Ct. 125, 87 L.Ed. 83 (1942); *Overnight Motor Co. v. Missel, supra*, 316 U.S. at 581, 62 S.Ct. 1216; *Brennan v. Valley Towing Co., supra*, 515 F.2d at 106; *Wirtz v. Leon's Auto Parts Co.*, 406 F.2d 1250 (C.A. 5, 1969). While

Hastings may have calculated the salaries with an eye on the minimum wage,[41] the Court finds that the employees had no such understanding.[42] In the absence of an express agreement between the employees and defendants, defendants' contention that the employees have already received appropriate overtime compensation cannot stand.

■■■■ Second, the defendants contend that the employees acquiesced in defendants' failure to pay overtime and, therefore, waived any right to overtime. As a factual matter, the evidence simply does not support defendants' claim of waiver. Few employees had any inkling that overtime was deserved,[43] and the defendants did not prove the existence of any agreement by which any employee surrendered his right to overtime. Furthermore, it is plain that an employee cannot waive his entitlement to overtime. *Brooklyn Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945); *Mumbower v. Callicott, supra*, 526 F.2d at 1188; *Walling v. Richmond Screw Anchor Co.*, 59 F.Supp. 291, 293–94 (E.D.N.Y.1945), aff'd, 154 F.2d 780 (C.A. 2, 1946), cert. denied, 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640 (1946).

> "The purpose [of section 7(a) of the FLSA] was to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." *Bay Ridge Co. v. Aaron*, 334 U.S. 446, 460, 68 S.Ct. 1186, 1194, 92 L.Ed. 1502 (1948).

"[T]o allow waiver of statutory wages by agreement would nullify the purposes of the [FLSA]", *Brooklyn Bank v. O'Neil, supra*, 324 U.S. at 707, 65 S.Ct. at 902, and, thus, defendants' argument grounded on employee waiver must be rejected.

---

**40.** See note 18 *supra*. The Secretary points to *Brennan v. Parnham, supra*, as an example of a case in which an award was made for the benefit of unknown employees, but in that case, unlike this one, the Secretary presented testimony in support of his claim.

**41.** T. 361.

**42.** T. 174–76, 194–95.

**43.** T. 174, 246.

Third, defendants assert that John DeFord ("DeFord"), one of the individuals in whose behalf the Secretary has brought this action, is not entitled to overtime pay because he was not an employee.[44] Instead, the defendants claim that he was a partner in the business with Hastings and therefore an employer.[45] Soon after DeFord began working for the defendants in early 1973, Hastings offered him a 15% partnership in the business and DeFord responded with interest to the proposition.[46] In return for assuming management responsibilities and purchasing 15% of the equipment, DeFord would have become entitled to a 15% share of the profits in addition to his weekly salary.[47] DeFord, however, never bought any interest in the business,[48] never exercised any managerial discretion,[49] and never shared in the profits of the business.[50] Furthermore, Hastings did not treat DeFord as a partner. In short, the Court finds that DeFord was an employee and not a business partner. See *Voyles v. Murray*, 297 F.Supp. 1288 (N.D. Tex.1969).

Fourth, the Portal-to-Portal Pay Act, 29 U.S.C. § 251 et seq. (the "Portal Act"),[51] although not expressly relied upon by defendants should be considered briefly. In general, the Portal Act may provide an exemption from the overtime provisions of the FLSA for time spent traveling from a central reporting location to the job site. When work of consequence is performed for

**44.** Defendants have abandoned a similar contention with respect to three other employees. (Docket Item 19, p. 11).

**45.** Defendants no longer suggest that DeFord was an executive within the scope of 29 C.F.R. § 541.1.

**46.** T. 19, 357.

**47.** T. 23. No agreement was ever expressed in writing.

**48.** T. 387. Purchase of R & M stock apparently was not considered.

**49.** DeFord did not negotiate any contracts and his work day was devoted almost exclusively to manual labor. T. 19–21, 387. In Hastings' absence he did have supervision of the other workers T. 34–35; in exercising this power, DeFord was acting as a strawboss. See 29 C.F.R. § 541.115.

**50.** T. 387. Shortly after DeFord started working for defendants, he did receive $1,300 which he then thought was the first payment of his partnership share. At Hastings' urging, DeFord signed a document, which Hastings told him was needed by his lawyer, that turned out to be a note for $1,300. Hastings eventually terminated his relationship with DeFord and sought to collect the money owed to him under the note. Under these circumstances, the Court concludes that the $1,300 payment was merely a loan and was not a partnership distribution. T. 19, 40–41, 386. Moreover, even if DeFord shared in R & M's profits, it would not necessarily follow that he was a partner or employer within the purview of the FLSA.

**51.** The relevant provision of the Portal Act, 29 U.S.C. § 254, reads:

"(a) Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

(b) Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either—

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer."

the employer before travel commences, travel time becomes subject to overtime. *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 399 (C.A. 5, 1976). The quantity and nature of the pre-travel work generated significant disagreement among the witnesses and may not have been sufficient to remove the usual three hour travel period from the Portal Act's scope.[52] *See Carter v. Panama Canal Co.*, 150 U.S.App.D.C. 198, 463 F.2d 1289 (1972), *cert. denied*, 409 U.S. 1012, 93 S.Ct. 441, 34 L.Ed.2d 306 (1972). However, Hastings testified,[53] and employees concurred,[54] that the salaries by agreement compensated travel time as well as on-site time, and, pursuant to 29 U.S.C. § 254(b), where an employer agrees to pay employees for travel time, the Portal Act exemption is no longer available. *Wirtz N. Marino*, 405 F.2d 938, 941 (C.A. 1, 1968); *Wirtz v. Sherman Enterprises, Inc.*, 229 F.Supp. 746, 753 (D.Md.1964).

## V. *Prospective Injunctive Relief*

Finally, the Secretary has urged the Court to enjoin the defendants from committing future violations of the FLSA's record-keeping and overtime provisions. Injunctions are frequently granted in cases of this nature, *e. g., Brennan v. Patio Cleaners, Inc.*, 373 F.Supp. 987, 991 (S.D.Ohio 1974), because of the significant public interest affected by violations of the FLSA, *see Bay Ridge Co. v. Aaron, supra,* and because the existence of an injunction eases somewhat the heavy burden imposed upon the Secretary for administering and enforcing the FLSA.[55] *Goldberg v. Cockrell*, 303 F.2d 811, 814 (C.A. 5, 1962). Furthermore,

"[t]he issuance of a permanent injunction in FLSA cases does not subject an employer against whom it runs to a penalty or a hardship since it requires him to do 'what the Act requires anyway—to comply with the law.' *Mitchell v. Pidcock*, 5 Cir. 1962, 299 F.2d 281, 287." *Dunlop v. Davis*, 524 F.2d 1278, 1281 (C.A. 5, 1975).

The defendants resist the imposition of injunctive relief. Since the end of 1973, neither R & M nor Hastings has been actively involved in erecting pre-fabricated units.[56] R & M has disposed of all assets[57] and its certificate of incorporation was voided in March 1975.[58] Hastings, who cites Social Security as his source of income, has not severed connections to the industry as he still performs some consulting work for others,[59] but it is fair to conclude that he has no present intention of becoming an employer again.[60]

The critical question, therefore, is whether the risk that the defendants will fail to keep appropriate employee records or to pay overtime is substantial enough to merit injunctive relief. *Brennan v. Southwire Co.*, 396 F.Supp. 525 (N.D.Ga.1974). Where there clearly is no danger of future violations, injunctive relief is inappropriate. Current compliance with the FLSA or current exemption from the FLSA do not ordinarily lead to the conclusion that injunctive relief is unnecessary. *Dunlop v. Davis, supra*, 524 F.2d at 1281; *Brennan v. Carl Roessler, Incorporated, supra.*

R & M, as a result of its dissolution, is no longer an entity capable of violating the FLSA,[61] and the Court can perceive no

---

**52.** T. 363; see note 21 *supra.* The Court need not and does not resolve this issue.

**53.** T. 362.

**54.** T. 306, 343.

**55.** Criminal sanctions for willful failure to maintain proper records or to pay overtime are prescribed by section 16(a) of the FLSA, 29 U.S.C. § 216(a).

**56.** T. 360.

**57.** T. 377.

**58.** Docket Item 14, Part III, No. 8.

**59.** T. 361.

**60.** There is nothing in the record to suggest that Hastings' failure to keep adequate records stemmed from anything other than Hastings' lack of knowledge about the FLSA. T. 375–77, 391–92. On the other hand, once the Secretary's investigation began, Hastings was less than cooperative. T. 280, 287.

**61.** The record does not suggest the existence of a successor to R & M.

purpose that would be served by an injunction directed against R & M. Accordingly, the Secretary's request for injunctive relief against R & M is denied.

Hastings, however, has not totally disassociated himself from the modular construction business, and it appears that his eventual return to that business is possible. The minimal burden that would result from injunctive relief, the public interest in effective enforcement of the FLSA, and the failure of Hastings to cooperate fully with the Secretary during the course of his investigation also persuade the Court that, in the exercise of its discretion, Hastings should be enjoined from violating sections 7(a), 11(c) and 215(a)(2) & (5) of the FLSA.

Judgment will be entered in accordance with this memorandum opinion.